INSURANCE COS. *v.* ESTES.

*(Nashville.* January 19, 1901.)

1. INSURANCE, FIRE. *Vendor's lien on insured property and suit to enforce it does not avoid policy.*

   The existence of an undisclosed vendor's lien upon insured property, and the institution of proceedings, with the insured's knowledge, to enforce it, does not operate to render a policy void which contains this provision, to wit: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto. shall be void . . . if the interest of the insured be other than unconditional or sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if, with knowledge of the insured, foreclosure proceedings be commenced with notice given of sale of any property covered by the policy by virtue of any mortgage or trust deed." (*Post, pp. 473–478.*)

   Cases cited: Delahay *v.* Memphis Insurance Co., 8 Hum., 684; Manhattan Insurance Co. *v.* Barker, 7 Heis., 504; Insurance Co. *v.* Crockett, 7 Lea, 725; Light *v.* Insurance Co., 105 Tenn., 480.

2. CHARGE OF COURT. *Called for by evidence.*

   It is not error for the Court to instruct the jury upon an aspect of the case, which, though not supported by direct and positive evidence, is supported by circumstances sufficient to justify and sustain a verdict. (*Post, pp. 478–481.*)

3. EVIDENCE. *Unstamped deed admissible as.*

   The fact that a deed, or other instrument, has not an internal revenue stamp upon it, as required by federal statute, does not render it inadmissible or ineffectual as evidence in the State courts. Congress has not the power to provide for the exclusion of deeds or other instruments as evidence in the State courts for want of internal revenue stamps, and, upon a proper construction of the federal statute, has not undertaken to do so. (*Post, pp. 481–489.*)

Insurance Cos. v.. Estes.

Cases cited: Sporrer v. Eifler, 1 Heis., 638, overruling Miller v.
Morrow, 3 Cold., 587; Miller v. Morrow, 5 Heis., 689; Walt v.
Walsh, 10 Heis., 321; Baugess v. Partee, 2 Shann. Cas., 269.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of David-
son County.

J. J. VERTREES and J. A. CARTWRIGHT for
Insurance Companies.

H. A. LUCK and RUTHERFORD & RUTHERFORD
for Hunter.

R. O. ALLEN for Estes.

McALISTER, J. These actions were commenced
separately to recover on policies of fire insurance.
The same questions being involved in both suits,
they were consolidated in the Court below and
heard together. The trial resulted in a verdict
and judgment against each company for the sum
of $1,000, the amount of its policy, with inter-
est. Both companies appealed, and have assigned
errors.

The declarations allege that on the thirteenth of
February, 1899, the defendant companies issued
to the plaintiff, E. M. Estes, policies of fire in-
surance for the sum of $1,000 each on a certain

mill building, machinery, etc., known as Brentwood Mills, situated in Williamson County, Tenn. The policies contained a clause "loss, if any, payable to W. A. Hunter, Jr., as his interest may appear."

On the first of April, 1899, said building, machinery, etc., were totally destroyed by fire, without the fault of the plaintiff. Defendant companies were notified of the loss, and within the time prescribed by the policies, the plaintiff filed with defendants proofs of loss, and defendants, although often requested to pay said loss, have wholly failed and refused to do so.

Defendants pleaded the general issue, and also following special pleas, to wit:

"1. That at the time the insurance was applied for and obtained the plaintiff stated and represented to the defendants that he owned the entire interest in the property insured, and the policy itself contains such representation, but as a matter of fact the plaintiff was the owner only of an undivided interest in the property, and not the whole thereof, which undivided interest was incumbered by a vendor's lien in favor of one W. A. Hunter for $1,260.80, which is unpaid, and also by a trust mortgage in favor of one J. E. Vandergrift for $100, unpaid, whereof the defendants then had no knowledge."

It is further averred that the contract of insurance contains the following clause, to wit:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional or sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if, with knowledge of the insured, foreclosure proceedings be commenced with notice given of sale of any property covered by the policy by virtue of any mortgage or trust deed."

Defendants further aver that "at the time of the issuance of the policy sued on, or about the twelfth of January, 1899, the property insured was incumbered by a vendor's lien in favor of one W. A. Hunter, and of which the defendant had no knowledge, and that on the first day of March, 1899, the said Hunter exhibited his bill in the Chancery Court of Franklin, Williamson County, Tenn., to enforce or foreclose said lien against the property for the payment of $1,260.80 due and secured by said lien as aforesaid. Defendants aver that plaintiff had notice or knowledge of said foreclosure proceedings before the destruction of the property insured, but that defendant had no notice thereof, wherefore defendants say said policy is utterly void."

Plaintiff demurred to this last or third plea, the demurrer was sustained, and this action of the Court is assigned as the first error.

It will be observed that the foreclosure pro-

ceedings mentioned in the policies relate to mortgages or deeds of trust. But it is insisted on behalf of the company that the clause of the policy in question applies with equal force to proceedings to enforce a vendor's lien, and that there can be no difference in principle, under the clause quoted, between the foreclosure of a vendor's lien and the foreclosure of a mortgage or deed of trust.

In *Delahay* v. *Memphis Ins. Co.,* 8 Hum., 684, it was held that a failure on the part of assured to disclose the existence of a mortgage on the property is not a circumstance material to the risk, and will not avoid the policy. The reason given for the ruling is that a mortgage or deed of trust is only a security for the debt, and if the property be destroyed the debt remains, so that the assured has as much interest in protecting the property as if there were no incumbrance on it.

In the case of *Manhattan Ins. Co.* v. *Barker,* 7 Heis., 504, it was a condition of the policy that it should be void if the interest of the insured in the property be any other than the entire, unconditional, and sole ownership of the property for the use and benefit of the insured, and this be not represented to the company. It appeared in that case there was an undisclosed vendor's lien on the goods sold, but the Court held that fact did not avoid the insurance.

It was held that the equitable owner of property is "the entire and sole owner" within the meaning of the policy. The reasoning of the Court was that if the existence of a lien by a regular mortgage undisclosed does not vitiate a policy, then one based merely on the retention of title by the vendor would have no more effect.

So in *Insurance Co.* v. *Crockett,* 7 Lea, 725, the policy provided, as in this case, that if the interest of the insured in the property be any other than the entire, unconditional, and sole ownership for the use of the assured, or if the building insured stands on leased ' ground, it must be so represented to ·the company, and so expressed in the written part of this policy, otherwise the policy shall be void." It appeared that the assured only had a title bond to the premises. Held, the policy was not avoided, inasmuch as· the failure to disclose the fact that the property was incumbered, was not material to the risk. The same principles were reaffirmed by this Court in *Light & Co.* v. *Inscurance Co.,* 21 Pickle, 480.

If, then, the existence of an undisclosed mortgage, deed of trust, or vendor's lien on the property insured will not invalidate the insurance, we cannot perceive how, on principle, notice of foreclosure of the mortgage or vendor's lien could have that effect, notwithstanding such a stipulation in the policy. Foreclosure proceedings are of

course the remedy of the mortgagee for non-
payment of his debt on maturity of the mort-
gage, or when the same is overdue. The remedy
is an incident of the mortgage, and while the
ownership of the property may thus be changed
during the currency of the insurance, it is a
result that is brought about by the existence of
the mortgage. The fact of the existence of the
mortgage, as we have already seen, does not viti-
ate the insurance.

The next assignment is, that the Court erred
in charging the jury on the subject of the equi-
table ownership of the property.

The facts necessary to be stated in this con-
nection are that W. A. Hunter, Jr., originally
owned said mill, and sold it by deed to Dobson
& Roser, retaining a vendor's lien to secure un-
paid purchase money. On August 31, 1898, Dob-
son and wife, by deed, conveyed to the plaintiff,
E. M. Estes, a one-third interest in said prop-
erty, Estes assuming the payment of one-third the
purchase money due Hunter. On October 18, 1898,
Dobson and wife sold their remaining one-third
interest in said mill to the plaintiff, E. M.
Estes, the latter assuming another third of Dob-
son's indebtedness to Hunter. It is not disputed
that these two deeds were executed and delivered
to Estes, and the purchase money paid by him.
It further appears that on December 30, 1898,
Dobson and wife and Roser and wife joined in

a deed conveying to Estes the remaining one-third interest in the mill property, Estes assuming payment of balance of purchase money due Hunter. This last deed recites that $200 was paid in cash, and notes executed for the balance, and that the other two-thirds of said tract had been "by us heretofore sold to said Estes by deed which is hereby ratified and affirmed." It is further recited that it was the intention of the grantors to transfer the whole of said tract known as the "Brentwood Mills Tract." Roser and wife signed and acknowledged this last deed, and left it at Esquire Rose's office, where Dobson later signed and acknowledged same. It is insisted on behalf of defendants that this last deed was never in fact delivered by the grantors to Estes, the plantiff, and hence the latter was not the sole owner of the property at the time the insurance was effected and when the loss occurred. Estes died before the trial, and in the absence of his testimony there was some confusion about the delivery of the last deed.

Estes swears in his proofs of loss that he was the owner of the entire property. Dobson testifies that the entire purchase money due him had been paid, and that Roser told him that he had sold his entire interest to Estes. Roser and wife, it appears, have removed from the State, and their evidence was not heard. Roser and wife

have never filed with the administrator of Estes any claim for unpaid purchase money.

It appears that Estes applied for and obtained the insurance January 12, 1899. At that time it was conceded that he owned a two-thirds undivided interest in the mill property, and that he had contracted for the remaining one-third interest, but it is denied that the deed to this remaining one-third interest has ever been delivered to him. It is also shown by the proof that at the time Estes took out the insurance he told Hart, the agent, that he owned two-thirds of the mill property, and had contracted for the remaining one-third interest. Now, upon these facts in proof, it is assigned as error that the Court charged the jury as follows, namely:

"If you find from the proof that E. M. Estes had previously purchased and obtained deeds to two-thirds of the property insured; that subsequently he contracted verbally for the purchase of the remaining third; that pursuant to such verbal agreement Estes paid in cash the sum of $200, with the understanding that the vendors would execute a deed and deposit the same with an attorney, to be by him delivered to Estes as soon as the balance of the purchase money was paid in full; if you further find that said balance was paid, and the deed subsequently delivered as agreed, then, in such case, Estes would be the equitable owner of an insurable interest in the

property under the terms of the two policies, and your verdict should be for the plaintiff in both, cases."

It is not insisted that this charge is erroneous as an abstract proposition, but the claim is that there was no evidence whatever that the deed was to be retained to be delivered upon the payment of the notes. It is insisted, further, that there was no evidence that the notes were paid, or that the deed was ever delivered. It is true there is no direct and positive testimony that the notes were paid, or that the deed was ever delivered, but we think from the facts and circumstances already recited the jury were well warranted in believing that the notes had all been paid, and that the deed had been executed and delivered to Parham for the vendee, Estes.

The next assignment is the Court erred in admitting as evidence the three deeds to Estes dated, respectively, October 18, 1898, August 20, 1898, and December 30, 1898, for the reason they were not stamped. The War Revenue Act, enacted by Congress in 1898, provided that certain instruments, including deeds, should be stamped. Section 13 provides "that if a document required to be stamped is either issued or recorded without being duly stamped, with intent to evade the law, the person offending shall be guilty of a misdemeanor," and it further provides that such

22 P—31

instrument, document, or paper not being stamped according to law, shall be deemed invalid and of no effect.

Section 14 provides "that hereafter no instrument, document, or paper required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded or admitted or used as evidence in any Court until a legal stamp, or stamp denoting the amount of tax, shall have been affixed thereto as prescribed by law."

This question first arose in this State in 1867, in the case of *Miller* v. *Morrow,* 3 Cold., 587, under the Internal Revenue Acts of 1862-64-65-66. In that case, Judge Shackleford delivering the opinion, the Court held that the Act of Congress which forbade the recording and using in evidence any instrument, document, or paper required by law to be stamped, unless a stamp of the proper amount shall have been affixed, was applicable alike to the proceedings in State and Federal Courts, and hence that a deed registered without being so stamped was invalid as evidence and as a muniment of title.

A petition to rehear was granted, and the cause was thereafter continued from term to term. In the meantime the case of *Sporrer* v. *Eifler,* 1 Heis., 638, was decided, in which the Court reached a directly contrary conclusion. Judge Tur-

ney, in delivering the opinion in the case, said: "There has been no delegation by the States to Congress of power or authority to legislate for the internal regulation of the States, nor are the people of the State prohibited by the constitutions from creating and regulating the Courts of the States, and declaring the rules for their government. The Legislature of the State is the only power that can enlarge or contract the rules of evidence or create and enforce new rules in the Courts of the States. If Congress may by its enactments make a change of the rules of evidence as applicable to the Courts of the States in any one particular, it may in all things. It follows," said the Court, "that stamps are not necessary to the validity of the paper as a muniment of title, nor to its competency as evidence in the Courts of the State." This case had been decided when *Miller* v. *Morrow* was finally heard, and the Court reversed the former ruling and adhered to the opposite view of the law as announced in *Sporrer* v. *Eifler,* 1 Heis. The case of *Miller* v. *Morrow* on the second hearing is reported in 5 Heis., 689. These rulings were afterwards followed in *Walt* v. *Walsh,* 10 Heis., 321, and in *Baugess* v. *Parlee,* 2 Shannon's Cases, 269.

An able argument has been submitted attacking the soundness of the views expressed in *Sparrer* v. *Eifler,* 1 Heis., and insisting that the rule

announced in *Miller* v. *Morrow,* when first de-
cided and reported in 3 Cold., is the correct
doctrine. But we are satisfied, after an extended
examination of the cases, that the great weight
of authority sustains the ruling in *Sporrer* v.
*Eifler,* 1 Heis.

Prof. Wharton, in his work upon the Law of
Evidence, Sec. 697, thus lays down the rule that
should govern in such cases: "Under the Federal
statutes of 1864 and 1866, providing that in-
struments without stamps should not be received
in evidence, the question frequently arose whether
stamps were necessary prerequisites to the recep-
tion of instruments in State Courts. As to this
question it is now only necessary to say that if
the statutes in this respect controlled the State
Courts, then there would be no other department
of State or local law, whether as to principle or
practice, which Congress, at least by subjecting
litigation of the particular point to a tax, would
not in like manner be able to control. To admit
the constitutional right of Congress, therefore, to
attach limitations to the reception of evidence in
the State Courts, would be to admit the right
of Congress to control the materials on which
the decisions of the Courts of particular States
should be based. That the limitation in question
was not within the power of Congress was ruled
by a series of State Courts. In other jurisdic-
tions, however, this limitation of the scope of

the statutes has been denied, though on reasoning which it is difficult to reconcile with the tenor of authorities in this branch of private international law or with the sovereignty conceded by the Federal Constitution to the States in all matters of process and evidence. A stamp Act has no force on the principles of international law, unless imposed by the local sovereignty; and to concede sovereignty to the Federal Government as to the evidential rules of State Courts is to surrender State sovereignty in one of its prime functions."

It is worthy of remark that Prof. Wharton, in announcing the rule of evidence on this subject, gives substantially the same reasons as those expressed by Judge Turney in *Sporrer* v. *Eifler,* decided many years anterior. That case was among the first to announce the rule, and its primacy as a precedent has been recognized and followed in the adjudications of other States until now it is the firmly established doctrine.

It will be observed that the War Revenue Act of 1898 not only declares that an unstamped deed shall not be received or used as evidence in any Court, but adjudges it invalid and of no effect. If the power to invalidate the contracts of the citizens of a State because unstamped resides in the National Legislature, it must be derived alone from that provision of the Federal Constitution which authorizes Congress to levy

taxes, duties, imposts and excises, and to provide for the payment of the debts and expenses of the Union. But, as said by the Court in *Latham* v. *Smith,* 45 Illinois, "the power of Congress to tax these instruments can be effectually carried out by the imposition of a fine upon the negligent party, if willfully so, and the innocent payee (or contractee) fully protected without any encroachment upon the right of the State to make the instrument valid as evidence in its own Courts, and for all other purposes germane to its execution."

That Court further said "while we concede to the Congress the right to lay and collect taxes, duties, imposts and excises to pay the debts of the Union, we deny its power to go into the States, and under a pretense of laying and collecting such taxes, take away from the States legitimate and long established rights which they have ever and for their own preservation must be allowed to exercise without question. The principle of the case of *McCullough* v. *Maryland,* 4 Wheat., 316, sanctions this view.

If our system of government is to remain what the wise and good fashioned it, a strictly federative system, the States sovereign over all subjects within their proper sphere of action, as the general government is over all subjects confided to it by the Constitution, then no power exists in the Congress to declare by law what shall or

shall not be evidence in a State Court, and what domestic contracts made by the people of the States, in virtue of their own laws, and having no connection with the Federal government, shall be valid or the contrary. The general government is as powerless in this regard as a State would be which should attempt to interfere with the subjects and rights exclusively confided to the "general government."

On this subject the Supreme Court of Mississippi, in *Davis* v. *Richardson,* 45 Miss., 499, said: "Action upon a contract, objection to admitting the written contract as evidence, on the ground that the revenue stamps had not been placed thereon. While the power of taxing the property, occupations, and business transactions, including contracts purely local and domestic, is asserted and sustained, yet it does not draw with it, as an incident, the right to exceed the taxing power. Congress may punish, as it proposes to do in the Acts of 1864 and 1866, for an evasion and failure to pay the tax. It may provide stringent means of collection by sale and distress. . . . Under the power to levy and collect taxes all these means may be employed as incidental, but under the taxing power Congress cannot intervene in the States and impose new conditions upon the alienations and conveyances of real estate. It cannot say that a deed, complete and perfect according to the local law, shall not be evidence

in the State Court unless it conforms to a requirement not exacted by the State, but prescribed by Congress.

*Knox* v. *Rossi,* 48 L. R. A., 305. Depositions objected to on the ground that the certificate was not stamped according to the provision of the Revenue Act 1898. Following *Carpenter* v. *Snelling* the Court said (quoting from that case): "This provision can have full operation and effect if construed as intended to apply to those Courts only which have been established under the Constitution of the United States and by the Acts of Congress, over which the Federal Legislature can legitimately exercise control, and to which they can properly prescribe rules regulating the course of justice and the mode of administering justice. We are not disposed to give a broader interpretation to the statute. We entertain grave doubts whether it is within the constitutional authority of Congress to enact rules regulating the competency of evidence on the trial of cases in the Courts of the several States which shall be obligatory upon them."

*Bumpass* v. *Taggert,* 26 Ark., 398. Suit on unstamped note objected to on ground of noncompliance with the statute. "Since, then, the Act does not in terms prescribe such rules to State Courts, we must conclude that the provisions of the Act were only intended to apply to Federal Courts, for we cannot by implication hold that

the intention of Congress was to invade the jurisdiction of the States in the administration of justice between their citizens."

We are aware that a contrary view has been taken of this subject by other Courts and jurists of equal eminence to those mentioned. The leading case on that side is *Chartiers* v. *McNamara,* 72 Pa. Two of the five judges, Chief Justice Thompson and Mr. Justice Sharswood dissented from the majority, expressly basing their dissent on the ground that this legistation alters a rule of evidence belonging to the State Courts.

Without further citation of the cases we hold there was no error in the action of the trial Judge in overruling the exception to the admissibility of the deeds in evidence.

It results that the judgment in each case is affirmed.