## H. T. HACKNEY CO. v. C. E. WOOD, et al.

Eastern Section. August 7, 1926.

Certiorari denied by Supreme Court, November 20, 1926.

1. **Insurance. Proof of loss held waived.**

Where assured's car was burned and the loss was immediately reported to the agent of the insurance company, who advised assured that he would do everything necessary and there was nothing further for assured to do, and a district agent of the insurance company came to assured's town to see her to adjust the loss, held the company had waived the requirement of proof of loss.

2. **Insurance. The fact that assured had given title retention notes on the property insured constituted no defense to her right to recover on the policy.**

In an action to recover on an insurance policy covering a Ford car where the assured had given title retention notes, held that the giving of these notes did not defeat assured's right to recover.

3. **Liens. Party holding title retention notes may establish a lien against insurance money recovered.**

Where a party bought a Ford car and gave title retention notes to secure a part of the purchase price and the car was destroyed by fire, held that the holder of the notes might establish a lien against the money recovered from the insurance company, although the holder of the notes could not himself maintain an action against the insurance company.

Appeal from Chancery Court, of McMinn County; Hon. T. L. Stewart, Chancellor.

Affirmed.

James Clark, of Athens, for appellant.

E. B. Madison, of Athens, for C. E. Wood; Jones & Davis, of Athens, for First Nat. Bank; Johnson & Cox, of Athens, for Liberty Ins. Co.

THOMPSON, J. Mr. C. E. Wood ran a small store in Athens, Tennessee. His wife, Maude Wood, lived with him and worked in the store.

On June 11, 1924, she bought a Ford touring car from the Service Motor Company for the price of $459. She paid a part of the purchase price in cash and gave a monthly series of $25 title retention notes for the balance. The Service Motor Company sold and negotiated these notes to the First National Bank of Athens.

On August 8, 1924, through Mr. L. L. Hoback, local agent at Athens, she insured the car in the sum of $400 against fire and theft in the National Liberty Insurance Company of America. In September, 1924 (the exact date is not shown) the car was practical-

ly destroyed by fire. This was, of course, while the policy was in effect.

On October 30, 1924, the H. T. Hackney Company filed the bill in this cause against C. E. Wood; Maude Wood; L. L. Hoback; National Liberty Insurance Company; and the Farmers Bank of Athens. The bill alleged that C. E. Wood, who was insolvent, and wife, Maude Wood, had perpetrated a fraud on it in that C. E. Wood had bought goods from it and others without paying for them; had sold the goods and put the money in the Farmers Bank of Athens in the name of Maude Wood; had then declined to pay for the goods; and had bought the car in her name with the money thus obtained. It then alleged the insurance and burning of the car and in effect garnished the National Liberty Insurance Company and its local agent at Athens, Mr. L. L. Hoback, as well as the Farmers Bank of Athens in which Mrs. Wood had deposited her money.

Mr. Hoback answered the bill and stated that so far as he knew there had been no adjustment of the fire loss and that no check with which to pay the same had come into his hands, etc. He stated that if any such check or money should come into his hands he would hold the same subject to the orders of the court.

C. E. Wood and wife, Maude Wood, filed an answer denying all allegations of fraud; or that Maude Wood was indebted to complainant, or that complainant had any right to collect its debt against C. E. Wood from the proceeds of the fire insurance policy which she had taken out on her own car.

The National Liberty Insurance Company of America, on January 15, 1925 (more than three months after the burning of the car), answered the bill and set up only one defense, i. e. that although it had received notice of the fire, yet no proof of loss as required by the policy had been furnished it within sixty days after the fire or at all.

On March 11, 1925, a joint pleading was filed in the names of H. T. Hackney Co., Maude Wood, and the First National Bank of Athens. This pleading was treated as an amended bill by the H. F. Hackney Company, a cross-bill by Maude Wood, and an intervening petition by the First National Bank of Athens. It showed that the First National Bank of Athens still held unpaid seven of the $25 title retention notes, and that both Maude Wood and the H. T. Hackney Company agreed that these notes (aggregating $175 and interest) should constitute a prior lien and should be paid first out of the proceeds of any recovery by Maude Wood against the insurance company. It showed that Maude Wood and the H. T. Hackney Company still maintained their controversy as between themselves as to which of them should be entitled to the balance

of any recovery which might be procured against the insurance company. It then alleged facts and circumstances on which it insisted that the insurance company had waived the requirement of furnishing proof of loss within sixty days after the fire, and prayed for a recovery in the name of Maude Wood against the insurance company for the face of the policy, i. e. $400.

The insurance company answered and set up two defenses, i. e., first the failure to furnish the proof of loss which it insisted had not been waived; and, second, the title retention notes which it claimed voided the policy.

Proof was taken and on the hearing the Chancellor filed a written opinion or finding as follows:

"In this cause the court is of opinion that the defendant insurance company is liable under its policy for the auto of Mrs. Maude Wood, which was destroyed by fire. I think that the insurance company under the proof in the record, has waived proof of loss as required by the express terms of the policy and so find from the proof.

"The question of retention of title I do not think is a good defense and especially so under the facts in the cause.

"Decree under cross-bill for amount of insurance, $400, with interest from filing of cross-bill and for costs of cause incident to proceedings under cross-bill. This recovery to be impressed with first or prior lien in favor of First National Bank, petitioner for amount of notes filed with interest thereon and to this end let petitioner have decree for said notes, with interest and attorney's fee.

"All other questions reserved and especially the question of recovery of Hackney & Company (against Maude Wood) and cost incidental to original bill, etc.

"So decree and let decree provide for appeal by defendant if desired and 30 days allowed to perfect same."

A decree was accordingly entered in favor of Maude Wood against the insurance company for $400, and interest, $20, making a total of $420 and all costs incident to the filing of her cross-bill. A judgment was then awarded the First National Bank against Maude Wood for $175 principal, $11.11 interest, and $18.61 attorney's fee, making a total of $204.72, and this recovery was declared a prior lien on her recovery against the insurance company, and the Clerk & Master was ordered to pay it out of Maude Wood's recovery when he should receive the money. All other questions, especially all questions arising on the original bill of H. T. Hackney Co., seeking a recovery against the defendants C. E. Wood and Maude Wood were reserved.

The insurance company has appealed to this court and assigned errors based on its two defenses or contentions; i. e. that it had not waived the proof of loss, and that the title retention notes voided the policy.

The policy is copied in full in the transcript beginning at page 37, and since the provisions touching the two questions involved are quite lengthy they will not be copied in this opinion.

It is undisputed that no proof of loss was ever made, and the facts upon the waiver are as follows:

Mr. Hoback was the company's local agent at Athens and he had authority to countersign and issue policies. His office was only a city block or so from Wood's store and he was in there frequently. In fact he traded some there and had written other insurance for Wood. He of course countersigned and issued the policy in question on August 8, 1924.

On an evening during the month of September, 1924, Mr. and Mrs. Wood, with their child, were driving the car from Athens toward Clearwater to attend a religious meeting. The car caught fire (evidently from a short-circuit) and burned. The remains of it (chassis) were worth about $25. On the next morning Mr. Wood went to Mr. Hoback's office and reported the matter to him and asked him what he (Wood) should do. Mr. Hoback told him that he need not do anything and that he (Hoback) would attend to the matter and would do whatever and all that was necessary. He did tell Mr. Wood to have the remains of the car hauled into Athens and stored in a garage which Mr. Wood did. During the days that followed Mr. Hoback was frequently in the store and assured Mr. and Mrs. Wood that he had notified the company of the loss and was handling the matter and that the loss would be adjusted. Still later, and at about the time of the expiration of sixty days after the fire, and while Mr. Wood was confined by gunshot wounds received by him, Mr. Hoback told him and Mrs. Wood that the company's adjuster (Mr. Chas. Murphy, who resided at Knoxville) had been to Athens to adjust the loss but would require a little more time, to which Mr. and Mrs. Wood readily agreed. On the strength of these assurances Mr. and Mrs. Wood did not file proof of loss.

It appears, also, that Mr. Hoback did notify the company of the loss, and that the company referred the matter to its adjuster, Mr. Murphy. It also appears that Mr. Murphy did go to Athens while Mr. Wood was confined from his wounds, and therefore did not get to see him or Mrs. Wood, and while there he got Mr. James Clark, attorney for the Hackney Company, to agree not to take a pro confesso against the insurance company, but to allow it additional time in which to file its answer. Mr. Clark testified that he agreed to this upon the express assurance and statement by Mr.

Murphy that he would file an answer showing the amount of the loss, that is, the amount due to Mrs. Wood under the policy, and that he (Clark) communicated these facts to Mr. and Mrs. Wood. It is not clear from the record whether this visit of Mr. Murphy to Athens was just before or just after the expiration of sixty days after the fire. But at any rate, the company's answer setting up the failure to furnish the proof of loss was not filed until January 15, 1925, which was more than ninety days after the fire.

Under these facts we think the furnishing of proof of loss was waived by the company, and that the Chancellor was correct in so finding. Gleason v. Insurance Co., 124 Tenn., 8; Ligon's Admix. v. Ins. Co., 87 Tenn., 341; Fisher v. Insurance Co., 124 Tenn., 450.

We also think the fact that the First National Bank held the $175 of title retention notes constituted no defense to the right of Maude Wood to recover on the policy (Hughes v. Insurance Co., 147 Tenn., 164; Inc. Co. v. Estes, 106 Tenn., 472; Light & Co. v. Ins. Co., 105 Tenn., 480), although the First National Bank itself could not have recovered directly under the policy (Bennett v. Featherstone, 110 Tenn., 27; Laundry Co. v. Inc. Co., 121 Tenn., 13).

It results that in our opinion there was no error in the decree of the Chancellor and the same will be affirmed and the cause remanded for further proceedings. The costs of the appeal will be paid by the insurance company and the sureties on its appeal bond.

Portrum and Snodgrass, JJ., concur.