JOHN WEIS, INC., v. REED et al.—118 S. W. (2d) 677.

Middle Section. February 19, 1938.

Petition for Certiorari denied by Supreme Court, July 2, 1938.

John H. Lechleiter, of Nashville, for complainant John Weis, Inc.

Albert Williams, Stanley Horn, Jr., and Joe Brown Cummings, all of Nashville, for defendant Mrs. Reed.

I. Schulman, Ferriss C. Bailey, Aust, McGugin & Spears, and Bass, Berry & Sims, all of Nashville, for intervening petitioners.

E. C. ARNOLD, Special Judge. On May 9, 1936, the original bill in the above cause was filed by John Weis, Ins., a Tennessee corporation, against Mrs. Notie M. Reed and Resolute Underwriters, a Rhode Island Corporation, having an office and agents in Davidson County. The bill alleged an indebtedness by Mrs. Reed of $594.80. An attachment of Mrs. Reed's interest in a sum due her on a fire policy from Resolute Underwriters, Inc., was prayed, on the ground that she

was about to dispose of her property fraudulently, and the same day attachment issued. Service of the original bill was had on Resolute Underwriters, and counterpart subpoena on Mrs. Reed in Putnam County on May 22, 1936. The Resolute Underwriters filed an answer admitting that it owed Mrs. Reed $800 for a fire loss, and at the same time it filed a cross-complaint, alleging the attachment by the complainant, that another attachment was issued from another court by Aaron Morris for $104.35, and it further alleged a demand made by Feigenbaum & Stern for $13.90, and another demand by the Tennessee Electric Power Company for $43.95. Although the Resolute Underwriters admitted it owed Mrs. Reed $800, it alleged it could not safely judge the claims of the various creditors, asked that its cross-bill be considered a bill of interpleader, and that the above parties be required to interplead and settle among themselves their respective claims for the $800, and that they be enjoined from proceeding further at law or in equity in this cause against the cross-complainant.

Subsequently, Montgomery Ward & Company was granted leave to file a petition, in which it alleged that Mrs. Reed was indebted to it in the sum of $51.60. Like permission was granted to Edward Kaeser to file a petition which alleged Mrs. Reed was indebted to petitioner in the sum of $65.

The various parties answered the cross-complaint of Resolute Underwriters.

On July 31, 1936, Mrs. Reed filed a plea of abatement to the original bill, a plea of abatement to the writ of attachment, a demurrer to the original bill, two pleas of abatement to the cross-bill of the Resolute Underwriters, a demurrer to the same cross-bill, pleas of abatement and demurrers to the petitions of Edward M. Kaeser, Montgomery Ward & Company, and to each of the answers and petitions of the Tennessee Electric Power Company and of Aaron Morris. A total of fourteen pleadings, by Mrs. Reed, preceded the filing of the answer on July 8, 1937. The answer referred to the various pleas in abatement and demurrers of Mrs. Reed, which had previously been overruled, and adopted them as her answer.

By stipulation filed by counsel for Mrs. Notie Reed, on July 8, 1937, it was admitted the above amounts were owing the various intervenors by her, except as to the claim of the original complainant.

On motion of Resolute Underwriters the Chancellor, on July 31, 1936, sustained the cross-bill as a bill of interpleader, and on July 12, 1937, found that the Resolute Underwriters had paid $800 into that Court, and that this sum represented insurance paid for fixtures and equipment conditionally sold by John Weis, Inc., Aaron Morris, Montgomery Ward & Company, and Edward Kaeser, to defendant Mrs. Reed, and later destroyed by fire; that the fixtures

and equipment had been sold under title retention contracts to her by John Weis, Inc., of the value of $594.80, for which sum judgment was given. To Montgomery Ward & Company, judgment was given for $51.60; to the Tennessee Electric Power Company, $43.95; to Edward Kaeser, $65. It is to be noted that no judgment was rendered in favor of Aaron Morris, although it was stated that the proceeds of the policy paid by Resolute Underwriters covered certain fixtures and · equipment conditionally sold by Aaron Morris to Mrs. Reed under title retention contracts.

██ To this decree Mrs. Notie M. Reed excepted (1) to the overruling of her pleas in abatement and demurrers; (2) because the Court ordered the distribution among the creditors of the $800 paid into Court. Complainant John Weis, Inc., excepted, assigning as error (1) failure to hold complainant was entitled to a priority or lien, and (2) holding that complainant did not have a valid assignment for $389. Mrs. Reed's appeal was perfected; but the record fails to show that the appeal by John Weis, Inc., was ever perfected. The record does not indicate that an appeal bond was made. Under the view expressed in England v. Young, 155 Tenn. 506, 296 S. W. 14, the appeal of John Weis, Inc., must be dismissed, as it was not perfected; but the argument under the assignments may be considered as a reply to the brief of appellant, Mrs. Reed. John Weis has no right to assign errors on Mrs. Reed's appeal, as she prayed a limited appeal. Gibson's Suits in Chancery (4 Ed.), secs. 1262 (note 10), 1263a.

The errors assigned by Mrs. Reed raise three questions: (1) Was there error in overruling Mrs. Reed's pleas in abatement and demurrers? (2) What sum does Mrs. Reed owe to John Weis, Inc.? (3) Are John Weis, Inc., and the other creditors entitled to share pro rata in the insurance money?

██ Counsel for Mrs. Reed urge that she did not waive her plea in abatement to the writ of attachment or to the fiat by making further defense to the original bill and the cross-bill, and cite section 877 of the fourth edition of Gibson's Suits in Chancery. We believe the language of that section, applied to this case, sustains the Chancery Court. In that section it is said: "If the defendant appears in person, or by solicitor, before publication is made, publication is unnecessary. But while appearance in an attachment suit gives the Court jurisdiction of the person of the defendant, it does not give jurisdiction of the property sought to be attached: that depends on the validity of the attachment proceedings."

But we think this proposition is immaterial.

The plea in abatement to the bill alleged that Mrs. Reed was a resident of Putnam County, Tennessee, and the plea in abatement to the attachment denied that she had fraudulently disposed of the proceeds of the policy, or of any other property, or that she

contemplated any such disposition of her property, either at the time of the attachment or at any other time. Her demurrer, filed the same day, sets up the defense that the bill failed to allege any ground for issuance of the attachment. Similar pleas in abatement to various cross-bills and demurrers to the same were filed by Mrs. Reed.

As far as the pleas in abatement are concerned, it will be noted that Resolute Underwriters, Inc., on May 19, 1936, tendered the $800 to the Court. This was more than two months prior to the date of filing the pleas, demurrer and answer to the original bill. The Court obtained control of the $800 when it was paid into Court. Mrs. Reed was served with process, and by her answer and stipulations she submitted herself to the jurisdiction of the Court.

We think the Court had jurisdiction of the case, but the pleas in abatement as to the attachment writs should have been sustained.

A proceeding on a bill of interpleader is not a proceeding in rem. 33 C. J. 420, 421, secs. 2 and 3.

The Court had jurisdiction of the bill of interpleader, as several of the defendants were residents of Davidson County and counterpart was sent to Putnam County and served on Mrs. Reed. Code, sec. 8653; Tennessee Procedure by Higgins & Crownover, sec. 171.

This service, together with the admission of Mrs. Reed in her brief that the Court had jurisdiction of the bill of interpleader, is sufficient.

The next questions are, (1) whether the defendants have any lien on the proceeds of the insurance policy, and (2) whether the Court had a right to render judgments against Mrs. Reed in their favor.

We think when the Court took jurisdiction of the bill of interpleader it had jurisdiction of the defendant, Mrs. Reed, and that the whole matter could be wound up in this one suit.

In a proceeding under a bill of interpleader there are two suits: (1) one involving the complainant to determine whether the Court has jurisdiction to decree that the defendants interplead, and (2) the controversy between the defendants. Each defendant becomes a complainant as to the other defendants.

"In the absence of appropriate pleadings interpleader cannot be sustained. A strict bill of interpleader involves two suits, and there may be two sets of pleadings: (1) Those having reference only to the rights of plaintiff to compel defendants to interplead. (2) The several complaints of defendants, in which their respective rights to the subject in controversy are set up. But a petition in nature of bill of interpleader does not necessarily involve two separate pleadings, although the better practice might be to require them. The general rules as to the construction of plead-

ings apply in interpleader cases.'' 33 C. J. 452, sec. 35; 15 R. C. L. 232, sec. 15; 11 Ency. Pleading & Practice, 472-473; Fletcher's Equity Pleading & Practice, 828, sec. 790.

The proceedings as between the defendants after the bill has been sustained as a bill of interpleader are of such nature that each one becomes a complainant and all the others defendants.

''Two adverse claimants to a fund, who are joined as defendants to a bill of interpleader, occupy, as between themselves, the position of complainant and defendant. Each defendant, after a decree in favor of complainant,' occupies the position of a plaintiff, and must state his own claim and answer that of the other.'' 33 C. J. 459, sec. 48; Fletcher's Equity Pleading & Practice, 828, sec. 790.

The Court takes jurisdiction by service of process on a bill of interpleader on one or more of the local defendants and by sending counterpart process to another county.

''When a bill of interpleader is filed, it calls for at least one, and perhaps two, litigations, one between plaintiff and all the defendants, as to whether they shall interplead; the other between the defendants in case the order goes for the plaintiff. . . .

''To warrant an interpleader, the Court must have jurisdiction of the parties making adverse claims to the subject matter in controversy. . . .

''Where the stakeholder resides in one county, in which an action has been begun by one of the claimants, and both claimants reside in another, a court in the latter county has jurisdiction of an interpleader proceeding. If the residences of the claimants are in different counties, a petition for an interpleader may be filed in the county of the residence of either.'' 33 C. J. 446, 447, secs. 28, 29; 33 C. J. 450, sec. 32.

Ordinarily, it is not necessary for each defendant to file a cross-bill or a counterclaim as to each other, where his claim is set out in the original bill, but he is entitled to relief on his answer to the bill of the stakeholder. However, he may file such further pleadings as may be necessary. 33 C. J. 459, sec. 48; Goddard v. Leech, Wright, Ohio, 476.

But if his claim is not set out in the original bill or his answer thereto, it is then necessary for him to state his claim by appropriate pleadings and have process served on the other defendants. 33 C. J. 459, sec. 48; 15 R. C. L. 232, sec. 15; Fletcher's Equity Pleading & Practice 829, sec. 790.

The court having acquired jurisdiction of the parties under the original bill of interpleader by service of process on the local defendants, counterpart process may be issued on a cross-bill or petition and be served on a co-defendant in another county. 33 C. J. 446, 447, 450, secs. 28, 29 and 32. Hence the pleas in abatement to the jurisdiction of the court must be overruled.

The claimants must recover on the strength of their own title rather than the weakness of that of the adversary.

"Both claimants are in the position of a plaintiff in possessory actions, and must recover on the strength of their own title rather than on the weakness of that of the adversary. The general rules apply in determining the burden of proof, admissibility, and sufficiency of evidence on issues between the claimants. In statutory proceedings for the substitution of defendant, the person substituted has the burden of proof." 33 C. J. 464, sec. 56; 15 R. C. L. 233, sec. 15; 2 Barb. Ch. Pr. 124; Fletcher's Equity Pleading & Practice, 827, note 75.

The court has jurisdiction to sustain the bill of interpleader and to dismiss the complainant, Resolute Underwriters, upon its payment of the $800 into Court, and to make an order on the defendants to interplead, and when defendant filed a petition setting out his claim he had a right to send counterpart subpoena to answer to Putnam County and have same served on Mrs. Reed.

There is no assignment of error as to the decree sustaining the bill as a bill of interpleader, hence the decree in that respect must stand, and pleas in abatement are not well made.

It results that the defendant petitioners had a right to take judgment against Mrs. Reed on their petitions. But the pleas in abatement to the attachments are well made, as there is no evidence that Mrs. Reed was about to fraudulently dispose of her property, and said attachments will be dismissed.

It is also admitted that petitioners, Montgomery Ward & Company and Edward Kaeser, have liens on the proceeds of the policy for the amounts of their decrees, it appearing that Mrs. Reed agreed in the conditional sales contracts to insure the property for their benefit. Therefore they have liens on the proceeds of the insurance for the amounts of their recoveries. 14 R. C. L. 1367, sec. 536; 26 C. J. 442, sec. 590; Hackney Company v. Wood, 3 Tenn. App. 421; 8 Couch on Insurance, 6539, sec. 1979.

We think, under the evidence, the complainant, John Weis, is entitled to a decree against Mrs. Reed for $594.80 with interest from the date of the decree in the lower court, but it is given no lien on the proceeds of the policy. It is, undoubtedly, the general rule that a mortgagee or the holder of a conditional sale contract has no right to the benefits of a policy taken by the mortgagor, unless it is assigned to him. The contract of insurance is purely a personal contract between the assured and the insurance company. The contract does not attach to or run with the title to the insured's property, and it is well settled that the mortgagee is not entitled to the insurance money in the absence of an agreement on the part of the mortgagor to insure the property for the benefit of the mortgagee. 14 R. C. L. 1365-1368, secs. 535, 536;

26 C. J. 438, secs. 587, 588; p. 442, sec. 590; Hackney Company v. Wood, 3 Tenn. App. 421.

██ It is insisted that Mrs. Reed made an assignment of part of the proceeds of the policy to John Weis, but she insists that it was made conditional upon getting the consent of the owner of a barber shop in Cookeville, and that the owner refused to permit her to execute the mortgage, and therefore the assignment was not consummated. This is borne out by John Weis's witness who took the assignment and who frankly admitted that it was a conditional assignment which had never been consummated, hence he has no right to a lien on the proceeds of the policy on this assignment.

All the other defendants are entitled to decrees as rendered by the Chancellor, with interest on the same; but they are not entitled to any liens on the proceeds of the policy by virtue of having retention of title contracts, as there was no agreement that she would insure the property for their benefit.

██ We think the Chancellor erred in ordering the distribution of the proceeds of the policy among all these creditors, for the reason that they had no liens on the proceeds of the policy, with the exception of the two parties above named. The fact that Mrs. Reed owed them did not give them a right to any interest in the proceeds of the policy unless they had liens thereon, and the Chancellor's decree is therefore modified as herein decreed.

The original attachment is dismissed. The decree sustaining the cross-bill as a bill of interpleader and ordering the sum of $800 paid into court is affirmed. The fee paid to the attorneys for Resolute Underwriters, Inc., was proper. Montgomery Ward & Company and Edward Kaeser, doing business under the name of the Nashville Beauty & Barber Supply Company, are entitled to liens to the extent of their respective judgments. The decree of the Chancellor in favor of petitioners and defendants against Mrs. Reed for the respective amounts found due, is affirmed, with interest from the date of the decrees. The decree ordering distribution of the proceeds of the policy paid into Court among these various creditors pro rata, is reversed. After the liens of Montgomery Ward & Company and Edward Kaeser have been satisfied, the balance of the money now in Court, after paying costs, will be paid to Mrs. Reed, unless retained as a result of further appropriate proceedings. The costs of the lower Court are decreed against Mrs. Reed. The costs of appeal are decreed against petitioners, except that no costs are decreed against Montgomery Ward & Company or Edward Kaeser.

The cause is remanded to the Chancery Court for distribution of the funds in that Court, in accordance with this opinion.

Faw, P. J., and Crownover, J., concur.

Opinion on Petition for Solicitor's Fee.

E. C. ARNOLD, Special Judge. This case is again before us on petition for the allowance of a fee for the solicitor for Notie Reed. He has filed an agreement with his client in which she assigns $125 of the funds in the hands of the Clerk & Master in this cause in full payment for his services as her solicitor in the cause, which states that the same shall constitute a lien upon the fund.

Upon an examination of the record and the authorities we are of the opinion that he is not entitled to a lien on the fund (unless given him by express agreement), as his services were rendered in defending her title to the fund, and no affirmative pleadings were filed by her to recover the fund. Butler v. Givens, 137 Tenn. 438, 193 S. W. 1063; Garner v. Garner, 69 Tenn. (1 Lea), 29.

"The charging lien of an attorney may be restricted to services which he performs on behalf of a client who asserts affirmatively a cause of action, claim, or counterclaim, as distinguished from services rendered for a negative purpose, such as to defeat a cause of action, or claim, set up by a client's adversary. In pursuance of this rule, it is held that where no affirmative relief is claimed no lien exists, except as to a judgment for costs." 7 C. J. S., Attorney and Client, page 1152, section 213.

Ordinarily, where the client agrees that the solicitor may have a lien on the fund or decree, such an agreement is valid. 7 C. J. S., Attorney and Client, pages 1146, 1147, section 211.

But the liens of the executions, should they be issued on the decrees in favor of the judgment creditors in this case, may be prior to the agreed lien of the solicitor with his client, as the decree in this court was rendered prior to the date of the agreement. In other words, an execution is a lien upon all leviable property of the defendant from the date of its teste and avoids all intervening sales or assignments. Code, sec. 8865; Tennessee Procedure by Higgins & Crownover, sec. 2138b; Gibson's Suits in Chancery (4 Ed.), sec. 653, note 5; Smith v. United States Fire Insurance Company, 126 Tenn. 435, 150 S. W. 97, 45 L. R. A. (N. S.), 266, Ann. Cas. 1913E, 196. Hence we will not at this time pass upon the question whether the solicitor has a valid lien under the agreement as against the judgment creditors in this cause.

Since we have held that the solicitor has no lien upon the fund independent of the assignment, the question presented by the assignment of Mrs. Reed to her solicitor is one of original jurisdiction, and the jurisdiction of this court is appellate only. Tenn. Code, sec. 10618.

The solicitor may, if he so desires, file the assignment in the Chancery Court, and appropriate proceedings may be had thereon under the orders and decrees of the Chancellor.

For the reasons above stated, the petition is denied.

Faw, P. J., and Crownover, J., concur.