IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **CITIZENS TRI-COUNTY BANK,** | **FROM THE GRUNDY CHANCERY COURT, No. 5352** |
| Intervening Plaintiff-Appellee, | **THE HONORABLE BUDDY D. PERRY, CHANCELLOR** |
| Vs. | **C.A. No. 01A01-9805-CV-00259** |
| **GEORGIA MUTUAL INSURANCE CO.,** | |
| Defendant-Appellant. | Lex A. Coleman; Ruth, McCarthy & Coleman, P.C. of Chattanooga For Defendant-Appellant |
| *REVERSED AND DISMISSED* | |
| | L. Thomas Austin of Dunlap For Plaintiff-Appellee |

**FILED**

**March 29, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

*TOMLIN, Sp. J.*

This case began as a breach of contract action filed by David and Darlene Crabtree ("Crabtrees"), the named insureds under an insurance policy issued by Georgia Mutual Insurance Company ("Georgia Mutual") insuring the Crabtrees' home against loss or damage by fire, as well as the producing agent, Johnny Hendrix ("Hendrix") in the Circuit Court of Grundy County. Georgia Mutual filed an answer, along with a motion for summary judgment. Later, during the pendency of a similar suit filed in federal court, Citizens Tri-County Bank ("Citizens") filed its motion to intervene in the case under consideration. Following the entry of an order in the federal court case whereby that court declined to exercise subject matter jurisdiction, an order permitting Citizens to intervene in the Grundy County case was entered.

Subsequently, the trial court in the case herein under consideration, granted summary judgment in favor of Georgia Mutual and Hendrix, holding that the Crabtrees were not entitled to any of the insurance proceeds on the ground of misrepresentations. The order granting such relief was made final as a result of an unappealed from order entered by the Middle Section of this Court in January, 1998, dismissing the appeal for failure to prosecute.

Prior to the judgment being entered in the trial court, Citizens, now a co-plaintiff, filed a motion for summary judgment against Georgia Mutual. Georgia Mutual filed a response thereto, along with a cross-motion for summary judgment against Citizens. Following oral arguments on the cross-motion for summary judgment, the trial court denied Citizens's bad faith claim and entered summary judgment in favor of Citizens against Georgia Mutual on all of the

issues, awarding Citizens a judgment in the amount of $14,463.90. This appeal followed.

On appeal, Georgia Mutual has raised what it contends to be four issues, but are instead the assertion and statement of what it concludes to be four statements of the law that should have been adopted by the trial court. As this Court views it, the real issue presented on appeal is whether or not the trial court erred in granting summary judgment in favor of Citizens and declining to grant summary judgment in favor of Georgia Mutual. We are of the opinion that the trial court did err and that it should have awarded summary judgment in favor of Georgia Mutual against Citizens. Accordingly, we reverse the action of the court and enter summary judgment in favor of Georgia Mutual.

In dealing with an appeal from the entry of summary judgment in the trial court, the responsibility of this Court is to determine whether or not the requirements of Rule 56, Tenn.R.Civ.P., have been met. ***Cowden v. Sovran Bank/Central South***, 816 S.W.2d 741, 744 (Tenn. 1991). In ruling on a motion for summary judgment, the appellate courts, like the trial courts, must review the matter in a light most favorable toward the nonmoving party and draw all legitimate conclusions of fact in his favor, thereafter finding that the moving party is entitled to a judgment as a matter of law. Rule 56.03, Tenn.R.Civ.P. ***Byrd v. Hall***, 847 S.W.2d 208, 210 (Tenn. 1993). No presumption of correctness attaches to the trial court's order granting summary judgment. The task of this Court is confined to a review of the record to ascertain whether or not the requirements of summary judgment have been met. ***Carvill v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). As we consider the correctness of the summary judgment motion made by each of the parties, we must view the evidence presented in a light most favorable to the nonmovant. ***Byrd v. Hall***, 847 S.W.2d at 211.

Both parties herein have agreed on the material facts. Therefore, it becomes our responsibility to consider these facts in light of the applicable law to ascertain whether the trial court was in error in granting summary judgment to Citizens and at the same time in denying Georgia Mutual's summary judgment motion. We will consider only those admitted facts that are relevant to this issue. Appellant, in its brief and argument, attempts to have this Court establish some new law as it relates to the duty and responsibility of a lender. Inasmuch as this case could really be disposed of on the summary judgment issue pertaining to existing law, we decline.

2

The Crabtrees applied for and obtained a home loan from the Palmer branch of Sovran Bank. The loan was to be secured by a first deed of trust on their property. Under the terms of this deed of trust, they were required to procure insurance on their home, insuring the property from damage or loss by fire or other hazards. The deed of trust also required that the insurance policy included a provision naming Sovran as the "mortgage loss payee."

The Crabtrees applied for this insurance with Georgia Mutual through the John Hendrix agency. The Crabtrees failed to disclose on the application for insurance that they had sustained a previous fire loss of a substantial nature some six years earlier, and that they had had several prior insurance cancellations, declinations and nonrenewals. Being unaware of these facts, Georgia Mutual issued one of its homeowners insurance policies to the Crabtrees in August, 1991, for a period of one year. The declaration page of the policy named Sovran as mortgagee. The policy also contained a standard Union Mortgage clause wherein Sovran was named as the mortgage loss payee. This policy was renewed by Georgia Mutual in August of 1992 for an additional one-year period.

Some time between June 1991 and January 15, 1992, NationsBank ("Nations") purchased the Palmer branch of Sovran, along with a loan portfolio that contained the Crabtrees' mortgage. By letter dated February 22, 1993, Nations notified Georgia Mutual that it was to be shown as the mortgage loss payee on the Crabtrees' policy and requested that Georgia Mutual alter its records to show this fact. Upon receipt of this notice, the mortgagee designation on the Crabtrees' policy was changed from Sovran to Nations. Nations remained on the policy as the named mortgagee until the coverage term expired on August 7, 1993.

On or about January 15, 1992, Citizens and Nations were involved in negotiations for the purchase by Citizens of Nations branch offices in Palmer, Altamont and Tracy City. Citizens also purchased portions of the loan portfolios of each of these branches, after it had had an opportunity to examine the loan portfolios and select the loans it wished to purchase. The Crabtrees' loan was among those purchased by Citizens, which began servicing the loan or about August 14, 1992.

It is undisputed that Citizens took no steps to notify Georgia Mutual after purchasing the branch bank and this loan to designate it as the mortgagee loss payee. On August 5, 1993, the Crabtrees' home and contents were completely destroyed by fire. The following day the

3

Crabtrees reported the loss to Hendrix which prepared a property loss notice. That notice named Nations, not Citizens, as the mortgagee loss payee. A few months thereafter, the Crabtrees submitted a sworn proof of loss in the amount of $64,590.00.

Georgia Mutual denied Crabtrees' claim and filed suit for declaratory relief against both the Crabtrees and Citizens in the U.S. District Court for the Eastern District of Tennessee. As previously noted, this suit was ultimately dismissed. At about the same time, the Crabtrees had filed the present suit for breach of contract naming both Georgia Mutual and agent Hendrix as defendants. Thereafter, Citizens filed a motion to intervene as plaintiffs, which was granted. The trial court granted Georgia Mutual and Hendrix's motions for summary judgment as to Crabtrees's complaint, finding that the Crabtrees had made misrepresentations in their application. This order was made final under Rule 54.02 Tenn.R.Civ.P. Thereafter, Citizens filed its motion for summary judgment as well against Georgia Mutual and Hendrix. Georgia Mutual also filed its motion for summary judgment against Citizens. Following a hearing, the trial court granted Citizens a summary judgment on all claims except the bad faith claim and denied Georgia Mutual's motion for summary judgment as to all claims except that of bad faith.

A mortgagee has an insurable interest in the mortgage property. Furthermore, the mortgagee's rights under an insurance policy are generally fixed at the time of the loss and are based on the mortgagee's interest in the property. *First Investment Co. v. Allstate Insurance Co.*, 917 S.W.2d 229, 231 (Tenn. App. 1994).

The deed of trust between the Crabtrees and Sovran stated in pertinent part as follows:

> **Sovran. Insurance**
> Grantors shall keep the improvements now existing or hereinafter located on the Property insured for the full insurable value against loss by fire and all hazards included within the term "extended coverage," and against such other losses as Lender may require. All insurance policies required pursuant to the preceding sentence shall include a standard provision, satisfactory to Lender naming Lender as a Mortgage Loss Payee.

The policy contained a standard union mortgage clause, which named Sovran as loss payee. The policy stated in relevant part:

> **12. Mortgage Clause**
>      . . . If a mortgagee is named in this policy, any loss payable under coverage A or B would be paid to the mortgagee and _____ as interest _____.

4

T.C.A. § 56-7-804 (1925) provides in part as follows:

> Whenever any person shall . . . as mortgagee . . . possess or have any fire insurance policy on realty made payable to such person, or other person as that person's interest may appear, then such insurance as to the interest of the . . . mortgagee . . . therein named shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured . . . .

The courts in this state have long recognized that a standard union mortgage clause under § 56-7-804 creates a separate and distinct contract between the mortgagee and the insurance company. *Phoenix Mutual Life Ins. Co. v. Aetna Ins. Co.*, 59 S.W.2d 517 (Tenn. 1933).

There has developed a body of law in many jurisdictions so as to create a general rule that a mortgagee or lien holder has no claim to the proceeds of a fire insurance policy unless the mortgagee or the lien holder has been named the mortgagee loss payee or the policy has otherwise been assigned to the mortgagee loss payee.

In *John Weis, Inc v. Reed*, 118 S.W.2d 677 (Tenn. App. 1938), the facts were these: Reed, the mortgagor, had suffered a fire loss and was entitled to the proceeds to be paid by the insurer. Weis was a mortgagee as to certain fixtures and equipment sold to Reed, and thereby claimed the right to the proceeds of the fire insurance policy. This Court held that while Weis was entitled to a judgment against Reed, it received no lien on the proceeds to the policy. The court noted:

> It is, undoubtedly, the general rule that a mortgagee or the holder of a conditional sales contract has no right to the benefits of a policy taken by the mortgagor, unless it is assigned to him. The contract of insurance is purely a personal contract between the assured and the insurance company. the contract does not attach to or run with the title to the insured's property, and it is well settled that the mortgagee is not entitled to the insurance money in the absence of an agreement on the part of the mortgagor to insure the property for the benefit of the mortgagee.

*Id.* at 682.

In *Western Express, Inc. v. Interested Underwriters at Lloyd's, London,* 942 S.W.2d 542 (Tenn. App. 1996), this Court faced a situation where a lienholder of personal property sought to have its name added as a party in a suit to enforce the payment of insurance proceeds. In this case, the lienholder had not been listed on the policy. The trial court denied lienholder's motion to be added as a party, and on appeal this Court affirmed, noting that because the lienholder was not listed on the policy as the loss payee, the insurance company had no notice

5

of his interest.

In *Cowles v. St. Paul Fire & Marine Ins. Co., et al*, 1987 WL 25381 (Tenn. App. W.S. Dec. 4, 1987), mortgagor borrowed $60,000.00 from First Citizens National Bank of Dyersburg ("First Citizens") to purchase a nightclub in Martin, Tennessee. Mortgagor signed a note and security agreement which required him to secure and maintain adequate fire insurance coverage on the building and at the same time naming First Citizens as a mortgagee loss payee. At the time of the sale, the nightclub was insured by another company. On the day of the sale, sellers called the company's local agent and instructed him to show mortgagor as the new named insured. When the mortgagor renewed the policy, the renewal certificate did not name First Citizens as loss payee or as mortgage holder. The proof was in conflict as to whether the seller had requested the agent to so name First Citizens. After the nightclub was destroyed by fire, it was discovered that First Citizens had not been named as loss payee under the policy. The insurer refused to pay the mortgagor. First Citizens ultimately sued the previous insurer to recover the proceeds. This Court found in favor of defendants, stating in part in its Opinion as follows:

> [i]f the insurer does not have notice or knowledge of the existence of the mortgagee's equitable lien on the proceeds it cannot be sued by the mortgagee for the proceeds, nor held liable to the mortgagee after having paid the proceeds to the insured. In this connection the mere fact that the insurer has knowledge of the existence of the mortgage does not charge it with notice or constitute knowledge of the existence of an equitable lien.

*Id.* at *2.

In the case before us, while Citizens argues that Georgia Mutual or its agent, Hendrix, had knowledge that Citizens had assumed Crabtrees' loan, there is no evidence in the record of that fact.

T.C.A. § 56-7-804, the mortgage clause contained in Georgia Mutual's policy and the cases cited above, are consistent in providing protection for the loss payee actually named in the insurance policy. In the absence of being so named, generally speaking protection is provided to a mortgagee loss payee where the insurance policy has been validly assigned. In the case under consideration, Citizens argues that while it is not the named payee, it is nonetheless the assignee of NationsBank, the named mortgage loss payee, and as such steps into the shoes of NationsBank. There is nothing in the record, however, of the various terms and conditions of

6

the contract between Citizens whereby Citizens acquired, among other things, the Crabtrees' note. We have only the assertion by Citizens that it bought the note. Stated another way, there is nothing in the record to support Citizens' claim that it is the assignee of NationsBank's interest in the Crabtrees' mortgage, which would include the right to be named as the mortgagee loss payee under Georgia Mutual's policy.

Georgia Mutual's policy contained the following provision relating to assignments:

### SECTION II - CONDITIONS

\*                  \*                  \*

**7. Assignment**. Assignment of this policy will not be valid unless we give our written consent.

While not directly on point, the case of ***Zaharias v. Vassis***, 789 S.W.2d 906 (Tenn. App. 1989), is quite compelling. Zaharias was the second mortgagee secured by personal property and equipment in a restaurant. He was also named as the second mortgagee in the insurance policy put into effect by the owner. The property herein referred to burned. The insurance paid the stated amount of the policy to the first mortgagee for the loss of the building but refused to pay Zaharias for the loss of his personal property collateral on the grounds that he was named as a "mortgagee" and not as a "loss payee" which would have been required in order to secure an interest in the personal property proceeds. The trial court found in favor of Zaharias, and the insurance company appealed. On appeal, this Court reversed the trial court, finding that there was no doubt that both the mortgagor and the mortgagee intended for Zaharias be protected under the insurance policy. However, we stated:

> However, it is as equally free from doubt that their mutual intent was never communicated to the insurer. The insurer was told only that Zaharias occupied the status of mortgagee, with no mention of the fact that Zaharias held an interest in the personal property. While it must be conceded that personal property may be the subject of a mortgage, the proof in the record is that in the insurance industry the term "mortgagee" applies only to real property and the term "loss payee" is used in regard to another who has an interest in personal property.

***Id.*** at 908.

Thereafter, this Court concluded:

> The question then arises as whether, after loss, one claiming an interest in the proceeds, either on contract principles (that is, a contract between the claimant and the insured) or on equitable principles, may bring suit to recover the insured's interest in the

7

> proceeds before it is paid to the insured. We know of no law that would prevent such a claim. However, in such case, the claimant's right to recover is based upon the insured's right and can rise no higher. (Citations omitted).

*Id.* at 910.

For all these reasons, this Court is of the opinion that if there had been an assignment of the insurance policy by Nations to Citizens, under the express terms of that insurance policy, any assignment by Nations to Citizens would be void due to an absence of consent to the assignment by Georgia Mutual. Furthermore, even in the absence of an assignment, Citizens would not be entitled to the proceeds. In the absence of being named as a mortgagee loss payee, or in the absence of a valid assignment of the policy, Citizens' right to recover is based solely in equity upon the insured's right to recover, and can rise no higher. *Zaharias*, 789 S.W.2d at 910.

In June 1997, the trial court in this case entered an order granting summary judgment in favor of Georgia Mutual and against the Crabtrees as to the Crabtrees' claim to the proceeds of the policy, ruling that in their application for insurance the Crabtrees had made material misrepresentations as to any prior fire losses. That judgment was appealed from, dismissed by this Court, and has long since become final.

In sum, Citizens in no way can be found to be entitled to the proceeds of Georgia Mutual's policy. It has no claim as a mortgagee loss payee because of its failure to be named as such in the policy. Any claim based upon the theory of an assignment is void due to the absence of Georgia Mutual's consent. Inasmuch as the insureds have been held to have no right to recover the proceeds, Citizens may not prevail under equitable principles.

Accordingly, the judgment of the trial court granting summary judgment in favor of Citizens on all claims except the bad faith claim, is reversed. The judgment of the trial court denying Georgia Mutual's motion for summary judgment as to all claims other than that for bad faith is also reversed. The monetary judgment entered by the trial court in favor of Citizens against Georgia Mutual in the amount of $14,463.90 is reversed. Georgia Mutual's motion for summary judgment as to Citizens is hereby granted, and Citizens suit against Georgia Mutual as intervening plaintiff is hereby dismissed. Costs in this cause on appeal are taxed to Citizens for which execution may issue, if necessary.

_____
**HEWITT P. TOMLIN, JR.**

SPECIAL JUDGE

**CONCUR:**

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**


_____
**DAVID R. FARMER, JUDGE**