14102

HICKLIN v. STATE FARM MUT. AUTOMOBILE INS. CO.

(180 S. E., 666)

*Messrs. James H. Fowles* and *C. T. Graydon,* for appellant,

*Messrs. Thomas, Lumpkin & Cain,* for respondent,

July 2, 1935.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The complaint of appellant alleges that on September 14, 1933, respondent delivered to him its policy of insurance whereby it insured appellant against liability for personal injuries inflicted from accident in the use and operation of appellant's Chevrolet sedan, until March 14, 1934, and that appellant had paid respondent the premium demanded therefor, and that respondent still retained more than enough to cover that premium. The complaint further alleges that on February 17, 1934, the plaintiff was operating his automobile and had an accident in which two pedestrians were injured, and on account of his liability therefor plaintiff had been forced to pay and incur debts in the sum of $1,500.00 for medical, surgical, and hospital expenses, and loss of time by the two persons injured, in addition to attorneys' fees in handling the compromise and litigation of the case, and that this liability was one of the perils insured by the policy issued him by respondent; that prompt notice of the accident had been given respondent, and that it refused to assume any responsibility and denied all liability therefor.

The respondent admitted that appellant made application to it for a policy of insurance insuring appellant against liability for personal injuries inflicted by accident in the use and operation of, among other vehicles, the Chevrolet sedan referred to in appellant's complaint, and that it issued and delivered to appellant its policy for the said Chevrolet sedan, but in effect denied all other allegations of plaintiff's complaint. It further answered and alleged that upon request and demand in writing by appellant, it canceled the policy of insurance which had been issued, and returned to appellant the amount of premiums paid on same, and the policy was therefore null, void, and of no effect prior to the accident for which appellant claimed reimbursement.

Upon a trial of the case, respondent denied liability primarily on the ground that the policy in question had been canceled at appellant's request long prior to the date of the

accident; secondly, on the ground that in any event the respondent would be liable only where the liability of the plaintiff has been fixed by law; thirdly, that appellant was not legally responsible for the accident; and, fourthly, that the only relationship existing between the parties at the time of the accident was that of debtor and creditor. At the conclusion of the testimony for appellant, respondent made a motion for a nonsuit on the above-stated grounds, and the motion was granted, but not on any of the said four grounds. The Court based its order of nonsuit on the fact that there had never been a contract between the parties, as shown by the testimony of and for the appellant, and that therefore there could be no recovery.

There is no exception based on this ruling of the trial Court, and in the briefs filed by the attorneys for appellant and attorneys for respondent neither consider this as one of the questions involved in the case, but in fairness to the trial Judge this Court feels that this phase of the case should be passed upon by it.

The testimony of appellant and the exhibits put in evidence by him show briefly the following: On September 5, 1933, a Mr. Brady, local agent for respondent at Columbia, S. C., solicited the liability insurance on six montortrucks and one Chevrolet sedan. Respondent is a mutual insurance company, and charged a membership fee of $5.00 per motor vehicle. Appellant agreed to insure with respondent company upon the understanding that respondent would write insurance on all of his motor vehicles, and thereupon paid to Brady, the agent of respondent, a membership fee of $35.00, that is, $5.00 per motor vehicle, and also gave him a check to be cashed immediately and which was cashed, and some postdated checks or drafts covering the premiums on said trucks and Chevrolet sedan. (At some other time another application was made for insurance on a Chevrolet coach also owned by appellant, and although respondent claims to have issued a policy for this coach, and mailed same to appellant, appellant denied

throughout the trial and at all other times that he had ever received this policy, and it is unnecessary to again refer to the policy on the coach for the purpose of deciding this case.)

Separate applications were made for each motor vehicle, but according to appellant's testimony, unless he could get insurance on all of his vehicles in one insurance company, he didn't want any, and that was the agreement he had with Brady, the agent of respondent, at the time the applications were signed.

In October, 1933, respondent sent appellant the policy, which is the basis of this suit, covering the Chevrolet sedan, and advised him that they would not write the insurance on the trucks, and upon receipt of this communication appellant immediately notified respondent that he did not want the insurance and demanded a return of his money, and from October until January appellant continued to demand a return of his money and a cancellation of the policy respondent had written on his Chevrolet sedan. Finally, on January 12, 1934, respondent, in compliance with the request of appellant, canceled the policy in question as of the date it was written, and sent appellant check which he cashed for all moneys which he had paid to it, except the $35.00 membership fee which had been paid to its agent, Brady, but stated, in the communication which actually conveyed its check to appellant, that its agent, Mr. Brady, was prepared to return him the $35.00, and he could collect same from Mr. Brady, closing its letter as follows: "If there is anything else about this situation that is not entirely clear to you, please feel free to write us."

The testimony shows that appellant talked to Brady in reference to the refund to him of the $35.00 membership fee, as shown by the testimony immediately following (quoting) :

"Q. Now, Mr. Hicklin, is it not a fact that Mr. Brady acknowledged to you that he owed you $35.00? A. Mr. Brady, as the company agent.

"Q. Hasn't he told you continuously that he was the one that owed you the $35.00 that you claimed a refund on? A. When I got that receipt I got it from the State Farm Mutual, not Mr. Brady. I could have given him a check and had the check as a receipt, but I didn't do that.

"Q. Isn't it a fact that Mr. Brady informed you that he was the person that owed you the $35.00? A. Yes, he said he owed it to me, but it is the company's receipt. He said he was going to pay me several times.

"Q. He told you the reason he could not pay you was because he didn't have the money, didn't he? A. No, that is the reason I have the company's receipt. I didn't want to take an individual's receipt.

"Q. I am talking about January, 1934, long after that receipt you are talking about. You and Mr. Brady discussed the question of getting your money back? A. Yes, he discussed it quite a little bit.

"Q. He told you he could not pay you because he was broke. He was out of funds? A. I don't remember each conversation that we had. We discussed it a good little bit.

"Q. It is a fact that he told you that he had gotten that $35.00 and he had spent it and he would give it back to you as soon as he could get hold of some money? A. I couldn't swear that. I don't remember.

"Q. If he testified to that, you wouldn't deny it? A. No, I wouldn't deny it, but I would not admit it, not until I think about it.

"Q. After January, after this insurance was terminated, before February 17th, how many times did you talk to Mr. Brady? A. I don't know. I know I tried to get in touch with him several times.

"Q. And when you did get in touch with him, isn't it a fact that he told you that the reason he could not pay you was because he didn't have the money? A. I don't remember that he did.

"Q. What excuse did he give you about paying you? A. I don't know that I ever got in touch with him. I tried.

"Q. Do you mean to say that you did not talk to him? A. If I did, I don't remember to talking to him over the telephone. I might have talked to him. I don't remember it right now.

"Q. At the time you gave him $35.00 that was to cover other membership for other cars? A. Yes, trucks and this car we are talking about now."

Brady never did pay appellant the $35.00, and respondent heard nothing further from appellant until on February 20, 1934, when he wrote Brady, as agent of respondent, advising that on February 17, he had been in an accident and as a result thereof two people were in the Columbia Hospital on account of injuries sustained in said accident. Respondent declined to assume any liability under its policy, and appellant, although the testimony shows was without negligence in the matter, proceeded to obligate himself to pay, on account of the injuries to the two people, sums aggregating $1,200.00 to $1,500.00, the major portion of which he actually paid. He was never sued or threatened with suit.

As hereinbefore stated, under the testimony adduced upon the trial, the trial Judge on motion for a nonsuit held that there had never been a contract between appellant and respondent, and that the relation of debtor and creditor was all that had been revealed, if that, as between appellant and respondent.

*"A contract is the meeting of two minds.* It involves an offer and acceptance, and it must bind both parties. The essentials of a contract are said to be a person able to contract, a person able to be contracted with, a thing to be contracted for, a good and sufficient consideration, clear and explicit words to express the contract, *and the assent of both the contracting parties.* (Italics added.) *Durlacher v. Frazer,* 8 Wyo., 58, 55 P., 306, 309, 80 Am. St. Rep., 918; *Haney v. Caldwell,* 43 Ark., 184, 189; *Komp v. Raymond,* 175 N. Y., 102, 67 N. E., 113, 115; *Bristol v. Mente,* 79 App. Div., 67, 80 N. Y. S., 52, 55."

The testimony of appellant clearly shows that there was never a meeting of the minds of the parties to the contract and that appellant refused to assent to the contract of respondent sent him, and therefore the contract (policy) was never in effect. When this appeared on the trial of the case, the trial Judge recognized his duty to order a nonsuit for this reason, although this defense had not been pleaded and the motion for nonsuit was not based on this ground.

But suppose appellant had accepted the policy written on his Chevrolet sedan and thereafter becoming dissatisfied demanded a cancellation thereof, and upon his demand of cancellation respondent canceled the policy and failed to return the unearned premium, could it be said that the policy would remain in force until such time as moneys of appellant held in hand by respondent would pay the premium, or until the policy expired by its own limitation? Clearly the only relationship which would exist following the demand of the insured that the policy be canceled and the cancellation of the policy by the insurer would be that of debtor and creditor, certainly after notice to the insured of the cancellation of the policy. This is a very different situation from the insurer desiring to cancel the policy. In the latter instance the insurer is bound to refund all unearned premiums in hand paid as a consideration for the policy before it is canceled and void. The cases cited in the brief of appellant's counsel on this subject are all cases where the insurer desired the cancellation, and are not applicable to the case at bar.

The policy introduced at the trial provided that either the insured or insurer could cancel same by written notice, and this was the method used by appellant to cancel the policy and disclaim any contract of insurance with respondent.

. The case of *Johnson & Stroud v. Rhode Island Ins. Co.,* 174 N. C., 201, 93 S. E., 735, a North Carolina case, was an action to recover on two tornado insurance policies. The defendant admitted issuing the policies in question and the amount of damage done by the storm, but refused payment

on the ground that at the time of the storm such policies were no longer in force, having been canceled at plaintiff's request. The testimony offered by defendant tended to show that previous to the storm the plaintiff had requested of defendant's agent that he cancel the policy and later reiterated this demand, and that cancellation was entered on the books of defendant company three or four days before the storm. The Court approved a charge to the jury in the following language: "I charge you, gentlemen of the jury, that all that is required for the cancellation of the policy and the immediate termination of the insurance is a request from the insured to the insurer, and as soon as received the cancellation takes effect at once. The assent of the insured [insurer?] is not required. That while it takes two to make a contract, in the cancellation of policies, one of the parties to the contract may end it, if the contract itself so provides. I charge you further that a request upon the part of the insured to the insurer's agent to cancel the policy operates as a cancellation upon the instant that such request is made (even if the insurer absolutely refuses to permit it to be done)." The Court then states:

"This position is directly approved in *Roberta Manufacturing Co. v. Assurance Co.,* 161 N. C., 88, 76 S. E., 865, as to policies issued in standard form or containing this or equivalent stipulation for cancellation on request of the insured. Without such provision, the ordinary rule is that, in contracts of insurance, as in other cases, there can only be a cancellation by agreement on the mutual assent of the parties (*Waters v. Annuity Co.,* 144 N. C., 663, 57 S. E., 437 [13 L. R. A. (N. S.), 805]); but the question in the present case is controlled by the express stipulation that the action of the insured, making direct request, shall suffice. And if this request was made there would be no significance in the fact that, after the loss occurred, the company, in making a remittance for the unearned premium, retained an amount sufficient at the annual rate to have carried the policy beyond the date of such loss. The company

insists that the amount is strictly correct as the rate is higher for the shorter period, the policy having been in fact canceled or abrogated pursuant to the contract stipulation. Even if the amount retained by the company was too much, this would only be a matter of adjustment between them as to the sum actually due, and would have no effect on the continued existence of the policy.

"Nor is there merit in the suggestion that the policies themselves were not in fact surrendered or actually canceled as a direct request to cancel by the insured to the company or its proper agent is held sufficient to abrogate the contract. *Roberta Manufacturing Co. v. Assurance Co., supra.*"

See, also, the cases of *Roberta Manufacturing Company v. Royal Exchange Assur. Co.,* 161 N. C., 88, 76 S. E., 865, a North Carolina case, and cases cited therein; and *Webb v. Grainte State Fire Ins. Co.,* 164 Mich., 139, 129 N. W., 19.

For the reasons above stated, the order of the trial Judge granting a nonsuit is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE, concur.