14694

HICKS v. HICKLIN *ET AL.*

(197 S. E., 390)

*Messrs. Thomas, Lumpkin & Cain* and *G. Badger Baker,* for appellant,

*Messrs. McEachin & Townsend,* for respondent, M. D. Hicklin.

*Messrs. Willcox, Hardee & Wallace, W. Stokes Houck, Truluck & Truluck* and *Heyward Brockinton,* for respondent, Colie Hicks,

May 27, 1938.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL.

This appeal involves the construction of a contract between M. D. Hicklin, one of the respondents above named, and State Farm Mutual Automobile Insurance Company, appellant above named.

This identical contract was before this Court in the case of *Hicklin v. State Farm Mutual Automobile Insurance Company,* 176 S. C., 504, 180 S. E., 666, and one phase of the contract was construed in that case. A different phase of the contract now comes here for construction.

The present case arises in the following manner:

On May 4th, 1936, Colie Hicks commenced a "negligence" suit against M. D. Hicklin and the above-named insurance company for damages arising from injuries sustained by her on November 3rd, 1933, in a collision between an automobile in which she was riding and a truck belonging to Hicklin and operated by one of his agents.

In her complaint she alleged that the appellant herein, State Farm Mutual Automobile Insurance Company, at the time of the said collision, November 3rd, 1933, provided indemnity insurance for said Hicklin upon his said truck, a "motor vehicle carrier."

By his answer, Hicklin denied liability by way of the usual defenses in negligence cases, but he admitted the allegation that State Farm Mutual Automobile Insurance Company, at the time of the said collision, November 3rd, 1933, provided indemnity insurance for him upon the said truck.

The appellant insurance company, in addition to other defenses, alleged in its answer that it "specifically denies that

it insured the truck and trailer referred to and described in said complaint against public liability, personal injury, or property damage, and further alleges that it has at no time insured or caused to be insured any truck, tractor, or trailer belonging to M. D. Hicklin against public liability, personal injury, or property damage caused by or resulting from the use and operation thereof; and further alleges that it has at no time issued and delivered to the said M. D. Hicklin, or to the Public Service Commission of South Carolina, or to any other state authority a policy or certificate evidencing insurance on any truck, tractor or trailer owned or operated by the said M. D. Hicklin, his agents or servants, and this defendant therefore alleges that it is a complete and entire stranger to the matter and things set forth in the complaint herein and specifically denies that it is liable or responsible for the damages alleged to have been sustained by the plaintiff on account of the alleged wrongful and unlawful operation of the motor vehicle therein described."

The contractual relations between Hicklin and appellant insurance company are clearly stated by this Court in the case of *Hicklin v. Insurance Company, supra*. In that case Hicklin undertook to collect from the insurance company moneys expended by him for injuries caused to two persons by reason of the operation of a certain Chevrolet sedan. This Chevrolet sedan, together with the truck above mentioned in the present case, were both involved in the contractual relations between Hicklin and the insurance company, appellant herein. Upon trial of that case the trial Judge granted an order of nonsuit in favor of the insurance company, which order was affirmed by this Court. The injuries caused by the Chevrolet sedan occurred on February 17, 1934; the injuries caused by the truck in the present case occurred on November 3rd, 1933.

In *Hicklin v. Insurance Company, supra,* this Court clearly stated the contractual relations between the parties as follows (page 667) :

"On September 5, 1933, a Mr. Brady, local agent for respondent [insurance company] at Columbia, S. C., solicited the liability insurance on six motortrucks and one Chevrolet sedan. Respondent is a mutual insurance company, and charged a membership fee of $5.00 per motor vehicle. Appellant [Hicklin] agreed to insure with respondent company upon the understanding that respondent would write insurance on all of his motor vehicles, and thereupon paid to Brady, the agent of respondent, a membership fee of $35.00, that is, $5.00 per motor vehicle, and also gave him a check to be cashed immediately and which was cashed, and some postdated checks or drafts covering the premiums on said trucks and Chevrolet sedan.   *   *   *

"Separate applications were made for each motor vehicle, but according to appellant's testimony, unless he could get insurance on all of his vehicles in one insurance company, he didn't want any, and that was the agreement he had with Brady, the agent of respondent, at the time the applications were signed.

"In October, 1933, respondent sent appellant the policy, which is the basis of this suit, covering the Chevrolet sedan, and advised him that they would not write the insurance on the trucks, and upon receipt of this communication appellant immediately notified respondent that he did not want the insurance and demanded a return of his money, and from October until January appellant continued to demand a return of his money and a cancellation of the policy respondent had written on his Chevrolet sedan. Finally, on January 12, 1934, respondent, in compliance with the request of appellant, canceled the policy in question as of the date it was written, and sent appellant check which he cashed for all moneys which he paid to it, except the $35.00 membership fee which had been paid to its agent, Brady, but stated, in the communication which actually conveyed its check to appellant, that its agent, Mr. Brady, was prepared to return him the $35.00, and he could collect same from

Mr. Brady, closing its letter as follows: 'If there is anything else about this situation that is not entirely clear to you, please feel free to write us.'

*　　*　　*　　*　　*　　*

"Brady never did pay appellant the $35.00, and respondent heard nothing further from appellant until on February 20, 1934, when he wrote Brady, as agent of respondent, advising that on February 17 he had been in an accident and as a result thereof two people were in the Columbia Hospital on account of injuries sustained in said accident. Respondent declined to assume any liability under its policy."

This Court in the case of *Hicklin v. Insurance Company* of course had before it only the contractual *rights* of the parties in so far as the policy on the Chevrolet sedan was involved. This policy, as seen above, was issued by the insurance company in October, 1933, and upon request of Hicklin was cancelled in January, 1934—before the injuries involving the Chevrolet sedan arose.

In discussing the contractual rights of the parties this Court in that case stated:

*"A contract is the meeting of two minds.* It involves an offer and acceptance, and it must bind both parties. The essentials of a contract are said to be a person able to contract, a person able to be contracted with, a thing to be contracted for, a good and sufficient consideration, clear and explicit words to express the contract, *and the assent of both the contracting parties.* (Italics added.)　*　*　*

"The testimony of appellant clearly shows that there was never a meeting of the minds of the parties to the contract and that appellant refused to assent to the contract of respondent sent him, and therefore the contract (policy) was never in effect.

"When this appeared on the trial of the case, the trial Judge recognized his duty to order a nonsuit for this reason, although this defense had not been pleaded and the motion for nonsuit was not based on this ground.

"But suppose appellant had accepted the policy written on his Chevrolet sedan and thereafter becoming dissatisfied demanded a cancellation thereof, and upon his demand of cancellation respondent canceled the policy and failed to return the unearned premium, could it be said that the policy would remain in force until such time as moneys of appellant held in hand by respondent would pay the premium, or until the policy expired by its own limitation? Clearly the only relationship which would exist following the demand of the insured that the policy be canceled and the cancellation of the policy by the insurer would be that of *debtor and creditor,* certainly after notice to the insured of the cancellation of the policy. This is a very different situation from the insurer desiring to cancel the policy. In the latter instance the insurer is bound to refund all unearned premiums in hand paid as a consideration for the policy before it is canceled and void."

So much for the case of *Hicklin v. Insurance Company,* which, as above seen, involved the same contract now before us, but which specifically involved the rights of the parties in so far as the Chevrolet sedan was concerned.

This case now before us involves the contractual rights of the parties in so far as the trucks above mentioned are concerned, for it was in the operation of one of these trucks on November 3rd, 1933, that respondent Colie Hicks was injured.

Was there on November 3rd, 1933, an enforceable contract of insurance between appellant insurance company and Hicklin covering the trucks? Or was the relation between Hicklin and the insurance company that of creditor and debtor?

Was there *"a meeting of two minds"?* Was there an *"assent of both of the contracting parties"*? We think not.

The record before us in this case shows that the contract which Hicklin wished to enter into was one insuring all of his six trucks and his Chevrolet sedan as a group. In one of

his letters he specifically states: *"We had a clear understanding that they were to be taken as a group and that we did not care to have the cars insured with a company unless the trucks could be insured also."*

On October 23rd, 1933, the insurance company wrote Hicklin:

"We have been informed by our Underwriting Department that it will be impossible to accept your six applications for liability and property damage insurance on your commercial trucks composed of five 1933 Chevrolet tractor-trailers and one 1931 Ford truck and trailer.

"Accordingly we are enclosing checks totalling $260.00 which accompanied your applications. These are postdated checks, a $79.00 cash check having been deposited, we will reimburse you for this amount as soon as it has cleared the bank.

"A policy has been issued to you covering your private passenger car, a 1933 Chevrolet sedan."

And on October 31st, 1933, the insurance company wrote Hicklin:

"We are enclosing herewith our voucher, No. 761422, in the amount of $79.00 to reimburse you for your check of like amount which was deposited at the time you submitted applications for insurance on Chevrolet and Ford tractor trailers."

And to quote again from the opinion of this Court in *Hicklin v. Insurance Company, supra:*

"In October, 1933, respondent sent appellant the policy, which is the basis of this suit, covering the Chevrolet sedan, and advised him that they would not write the insurance on the trucks, and upon receipt of this communication appellant immediately notified respondent that he did not want the insurance and demanded a return of his money, and from October until January appellant continued to demand a return of his money and a cancellation of the policy respondent had written on his Chevrolet sedan."

There was clearly no "meeting of two minds"—no "assent of both the contracting parties". And to quote once more from *Hicklin v. Insurance Company, supra:*

"The testimony of appellant clearly shows that there was never a meeting of the minds of the parties to the contract and that appellant refused to assent to the contract of respondent sent him, and therefore the contract (policy) was never in effect."

It therefore of necessity follows that on November 3rd, 1933, the date on which respondent, Colie Hicks, was injured by the operation of one of these trucks, there was between Hicklin and appellant insurance company no contract of insurance covering the operation of the truck. Following the decision of *Hicklin v. Insurance Co., supra,* in its reasoning, on that date the relationship between Hicklin and the insurance company was that of creditor and debtor.

Upon the trial of this cause in the County Court of Florence County—at which trial it is interesting to note that M. D. Hicklin, one of the defendants in the suit, testified as a witness for the plaintiff, respondent herein—at the close of the testimony the insurance company, appellant herein, moved for a directed verdict. Hon. R. W. Sharkey, presiding Judge, refused the motion.

The jury rendered a verdict for Colie Hicks, respondent herein, in the sum of $1,500.00 against M. D. Hicklin alone. Both Hicklin and Colie Hicks then moved for a new trial, which motions were granted.

Appellant insurance company now appeals from the order overruling its motion for a directed verdict in its favor, and from the order granting a new trial.

For the reasons and conclusions hereinabove stated it is our opinion that the trial Judge was in error in refusing the motion for a directed verdict in favor of the appellant insurance company, and that he was also in error in granting the motion for a new trial.

It is therefore ordered that this cause be remanded to the Court below with instructions that a judgment be there entered in this cause in favor of appellant insurance company.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.

## ORDER ON PETITION FOR REHEARING

*Per curiam.*

The opinion in this cause was filed on May 27, 1938, and on June 6, 1938, there was filed a petition for a rehearing.

The case was ably and thoroughly argued before this Court, and the briefs filed by counsel were well prepared.

In the consideration of the issues involved in the cause this Court took into account and gave heed to the matters now presented by the petition for rehearing. These propositions have already been presented to this Court in the printed briefs and in the oral argument. These propositions have been considered by this Court in the preparation of the filed opinion. These points have not been overlooked and have not been misapprehended, and do not therefore fall within the terms of Rule 17 of this Court.

Inasmuch, therefore, as this Court has already considered the propositions presented in the petition for rehearing, it is the judgment of the Court that the petition for rehearing be, and the same is hereby, denied.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.