[S. F. No. 19518. In Bank. Oct. 5, 1956.]

STEPHEN C. VYN, Plaintiff and Respondent, v. NORTH-WEST CASUALTY COMPANY (a Corporation), Cross-complainant and Respondent; NORWICH UNION FIRE INSURANCE SOCIETY (a Corporation), Appellant; ST. PAUL MERCURY INDEMNITY COMPANY (a Corporation) et al., Cross-defendants and Respondents.

Foley, Branson & Limpert and Francis N. Foley for Appellant.

Edward A. Friend for Plaintiff and Respondent and for Cross-defendant and Respondent St. Paul Mercury Indemnity Co.

Millington & Dell'Ergo, Wayne R. Millington and Robert J. Dell'Ergo for Cross-complainant and Respondent.

Keith, Creede & Sedgwick and Frank J. Creede for Cross-defendant and Respondent Royal Indemnity Co.

CARTER, J.—Plaintiff, a highway common carrier, commenced an action alleging that one of his trucks was involved in an accident on June 5, 1951, in which two persons named Kuhwarth were killed; that at that time there were in effect, covering his truck, policies of public liability insurance issued by Northwest Casualty Company, Norwich Union Fire Insurance Society, Ltd. and St. Paul Mercury Indemnity Company; that the Kuhwarths' representatives commenced actions against him which he settled by paying a total of $6,600; that St. Paul is willing to pay one-third of the amount. Only

Northwest and Norwich were made defendants; he asked for judgment against them for their share of the $6,600.

By order of court St. Paul and Royal Indemnity Company were made parties to the proceeding. Norwich and Northwest filed cross-complaints which were answered; plaintiff's complaint was also answered. The issues as joined presented mainly the question of which of the four insurance companies was liable for the settlement with Kuhwarths' representatives or what portion each should bear. It is conceded that Royal had no outstanding policy covering plaintiff; judgment was in its favor, and no contention is made here for reversal.

The court rendered judgment concluding that plaintiff was insured with Norwich and it must pay all of the settlement because, although plaintiff also had insurance with Northwest and St. Paul, those policies had "other insurance" provisions under which they were not liable except to the extent that the claim exceeded the coverage offered by the Norwich policy which contained no such "other insurance" clause. Judgment was accordingly entered that plaintiff recover the $6,600 from Norwich and for St. Paul against Northwest and Norwich for costs; that Northwest recover its costs of "defending the Complaint." Norwich, alone, appeals from the judgment, asserting the evidence is insufficient to support the judgment that it had an insurance contract with plaintiff and in any case plaintiff had no interest in the controversy because St. Paul rather than plaintiff had paid the $6,600 Kuhwarth settlement.

It is undisputed that the Kuhwarth settlement was fair and reasonable. St. Paul alone defended plaintiff in the actions and negotiated the settlement. The policy of each of the three insurers, Norwich, Northwest and St. Paul, is in an amount more than sufficient to pay the settlement. The court found that all three insurance companies were notified of the Kuhwarth accident. When the Kuhwarth settlement was made, St. Paul paid plaintiff the amount thereof and plaintiff obtained a cashier's check for the balance which was paid to the Kuhwarths' representatives, and a loan agreement was made between St. Paul and plaintiff under which plaintiff was to pay the $6,600 if and when he recovered it from the other alleged insurers.

Norwich asserts that there was no evidence that there was an insurance contract between it and plaintiff because the policy was not delivered to plaintiff nor accepted by him; that there was no meeting of minds. Plaintiff testified that at the

time of the Kuhwarth accident he did not "have" a Norwich policy; that he had never "ordered" any policy from Norwich; that no policy was tendered to him; that the only policy he had was with St. Paul; that he had notified Williams of Williams Insurance Center, insurance agent for Norwich and Northwest, prior to June 1, 1951, that he was not going to take any insurance from him and had placed his insurance elsewhere; that he placed his insurance with St. Paul through an agent other than Williams; that he did not give notice of the accident to any insurance carrier except St. Paul, to whom he handed the papers served on him in the Kuhwarth actions.

The uncontradicted testimony of Hazel Reed, the office manager of Williams Insurance Center, Norwich's agent, is in harmony with plaintiff's testimony and shows that Williams had been handling plaintiff's automobile insurance and had placed a Northwest policy for him which expired on June 1, 1951; that although they were told by plaintiff prior to June 1st that he was placing his insurance elsewhere and they had no request for insurance from plaintiff, they ordered Norwich and Northwest policies for plaintiff hoping to keep his business. When the Norwich policy arrived, they attempted to deliver it to plaintiff and to his bank which held a loan on his equipment but both refused the policy, plaintiff stating he had obtained insurance elsewhere; that being unable to deliver the policy they returned it to Norwich.

Plaintiff does not question this evidence but calls our attention to the following facts in the record: That at Williams' request Norwich issued, that is, executed, a policy to plaintiff to run from June 1, 1951, to June 1, 1952, and sent it to Williams; it also filed a notice with the state Public Utilities Commission that as required by the Public Utilities Code, it had insured plaintiff for the period in question. Norwich cancelled the policy in June after the accident, and on June 7, 1951, so advised the Public Utilities Commission, to be effective on June 26, 1951. On April 11, *1952*, Williams sent a bill to plaintiff on a Norwich form for premium for the policy from June 1, 1951 to June 24, 1951, and plaintiff paid the bill.

Accepting this undisputed evidence, there is no basis for liability under the Norwich policy where the premium was paid long after the loss (the accident) and St. Paul was negotiating a settlement of the claim arising out of the accident. It is said in *Hargett* v. *Gulf Ins. Co.*, 12 Cal.App.2d 449, 457

[55 P.2d 1258] : "Even though at the time the premium was paid to the Monarch company the company had actual knowledge of the existence of the chattel mortgage, which fact does not appear to have been established, the property had already been destroyed. Plaintiff must rely entirely upon the doctrine of estoppel to foreclose the defenses interposed by this company; obviously no estoppel could have arisen after the destruction of the property. An estoppel arises when the assured, because of some act or conduct of the insurer, has been dissuaded from obtaining other insurance upon the property and has proceeded to rely upon the validity of the policies he holds. Plaintiff was not, nor could he have been, prejudiced in any way by the acceptance and retention of the premium by the Monarch company after the destruction of the property. The evidence of plaintiff in the particulars we have pointed out falls far short of establishing an estoppel against any of the companies to rely upon the provisions of the policies, under which the property destroyed by the fire was not at the time covered by insurance." It is said in *Commercial Cas. Ins. Co.* v. *Columbia Cas. Co.*, 22 Tenn.App. 656 [125 S.W.2d 493, 495] : "It appears that a policy covering this automobile was issued by the Columbia Casualty Insurance company, but the evidence is unsatisfactory as to whether it was issued before the accident or afterwards. But whether a policy was ever issued, is not material in this case, as the evidence is uncontroverted that Carter did not apply for the policy, had no knowledge of its issuance, never accepted it; that he was insured in the Commercial Casualty Insurance Company, which policy he had not cancelled; and that he refused to ratify the issuance of the policy in the Columbia Casualty Company after the accident. There was, therefore, no contract between Carter and the Columbia Casualty Company, even if a policy was issued dated September 26, 1928.

"The contract of insurance is purely a personal contract between the insured and the insurance company. 32 C.J. 1092, § 175; 14 R.C.L. 1365, § 535; *John Weis, Inc.* v. *Notie Reed*, 22 Tenn.App. 90 [118 S.W.2d 677, 682] ; *Hackney Co.* v. *Wood*, 3 Tenn.App. 421.

" 'The assent of insured obtaining a fire policy from one insurer to a policy from another insurer as a substitute for the first policy is essential to the existence of a completed contract evidenced by the second policy, and, where such assent is not procured until after [a loss], the second insurer is

not bound.' *Waterloo Lumber Co.* v. *Des Moines Ins. Co.*, 158 Iowa 563, 138 N.W. 504, 51 L.R.A.,N.S., 539.'' In *Byrne* v. *Prudential Ins. Co. of America*, (Mo.) 88 S.W.2d 344, 346, the court said : ''While a contract of insurance 'has some features which distinguish it from an ordinary commercial contract, yet in general respects it is like any other contract and is governed by the same rules.' 32 C.J. p. 1091. It is as essential to the making of a contract of insurance as it is to any other contract that there be 'an agreement, or meeting of the minds of the parties' thereto. 32 C.J. p. 1095. Here the action is based upon an alleged contract between Schockley and the defendant insurance company. The application is a request or proposal for insurance and also supplies the insurance company with the information necessary to enable it to pass upon the application. An acceptance by the company and the issuance and delivery of its policy of insurance in reliance upon and in conformity with the application completes the contract. Admittedly Schockley did not make out or sign the application, was not present at the time, nor was it shown that he ever consented to the issuance of the policy of insurance on his life and in his name or had knowledge thereof. Absent any evidence tending to show that either before or at the time he consented to the taking of the insurance in his name or subsequent to the making of the application or issuance of the policy had knowledge thereof and either specifically or impliedly ratified same it seems to follow, in such situation, as a matter of law, that no contract was entered into or existed between Schockley and the insurance company.'' (See *Hicks* v. *Hicklin*, 187 S.C. 355 [197 S.E. 390] ; *Hicklin* v. *State Farm Mut. Automobile Ins. Co.*, 176 S.C. 504 [180 S.E. 666] ; *Mallard* v. *Hardware Indem. Ins. Co.*, (Tex.Civ.App.) 216 S.W.2d 263.) Clearly, under plaintiff's theory there would not be an insurance contract, under the facts here presented, because the contingency was known to both plaintiff and Norwich when the premium was paid. ''Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.'' (Ins. Code, § 22.) ''Except as provided in this article any contingent or unknown event, whether past or future, which may damnify a person having an insurable interest, or create a liability against him, may be insured against, subject to the provisions of this code.'' (*Id.*, § 250.) The exceptions refer to lotteries, gaming and wagering (*id.*, §§ 251-252). The notice to

the Public Utilities Commission did not have the effect of creating a contract of insurance between the parties here involved, we are not concerned with a member of the public.

Reference is made to a letter written by counsel for Norwich on June 19, 1952. That is of no aid, for even though it stated that notice was given to the Public Utilities Commission by Norwich, it also stated that Norwich had issued no policy to plaintiff, but it was "collaborating" with St. Paul, which was plaintiff's insurer.

Cases such as *Hill* v. *Industrial Acc. Com.*, 10 Cal.App.2d 178 [51 P.2d 1126], cited by plaintiff concerning the effect of the sending of a policy by the company to its agent and the payment of premium did not involve a situation such as we have here where plaintiff never ordered any insurance, informed the insurance agent he did not want any insurance and the payment of premium was made long after the loss and another insurer was actively handling the case for the insured.

Inasmuch as the judgment against Norwich must be reversed for insufficiency of the evidence to show that it had insured plaintiff and only Norwich appeals, the question arises as to the disposition or effect on the remainder of the judgment. As heretofore stated the court found that plaintiff was insured by Norwich, *Northwest* and St. Paul but that only Norwich was liable because the policies of Northwest and St. Paul were to pay any loss over and above that covered by other insurance.[1] Since by reason of the reversal as to Norwich there is not other insurance insofar as Norwich would be the other insurance carrier, the basis for the judgment exonerating Northwest and St. Paul falls. This would mean that the question on retrial would be, which was liable of those two for the whole loss or some portion thereof.[2] It must therefore follow that the portion of the judgment in favor of Northwest and St. Paul will have to be reversed even though plaintiff did not appeal, because the legal basis for such judgment is gone by the reversal. The judgment as to them on that basis is so interwoven and dependent on

[1] Northwest's policy says if there is other valid insurance the policy shall be void, except to the extent the limits of the policy are in excess of the limits in the other insurance in which case the excess is covered. St. Paul's policy says no insuring agreement thereof shall apply to any loss if the insured has other insurance except as respects any excess beyond the amount which would have been payable under the other insurance.

[2] This is assuming that no better case could be made than has been made to show plaintiff was insured with Norwich.

the judgment against Norwich that that portion must be reversed even though no appeal was taken therefrom. (*American Enterprise, Inc.* v. *Van Winkle*, 39 Cal.2d 210 [246 P.2d 935].) It is still true, however, that in addition to that basis for the judgment, the court found that Northwest and St. Paul had policies in effect at the time of the Kuhwarth accident covering plaintiff which may appear to be severable and unaffected by the reversal of the Norwich judgment and destructive of the other insurance basis for exonerating them. However, the judgment must be reversed because, on its face it says nothing about the liability of Northwest or St. Paul. It is merely a judgment for plaintiff against Norwich and for St. Paul against Northwest and Norwich for costs; and that Northwest recover costs of "defending the Complaint." Hence a reversal, which is necessary, leaves no judgment as to St. Paul's and Northwest's liability. There is only the finding above mentioned that they carried insurance for plaintiff. Thus it follows that the whole matter is thrown open to reascertainment on retrial.

It may be mentioned that the evidence is probably insufficient to show that Northwest insured plaintiff because it is substantially the same as that with respect to Norwich but that is a matter which may be determined on retrial. It is unnecessary to consider Norwich's objection that plaintiff does not have a standing to sue because of its claim that he was paid by St. Paul and the "loan" arrangement whereby plaintiff agreed to repay the settlement money to St. Paul if it recovered from the other insurers, was not a true loan. Since the judgment must be reversed the matter is one subject for determination on a retrial, and in this connection it should be observed that all the parties are before the court for a determination of the amount if any to be borne by each insurer. (See *Fidelity etc. Co.* v. *Fireman's F. I. Co.*, 38 Cal.App.2d 1 [100 P.2d 364]; discussion and cases collected, 5 Stan.L.Rev. 147.)

The judgment in favor of the Royal Indemnity Company is affirmed. The remaining portion of the judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

The petition of respondents Stephen C. Vyn and St. Paul Mercury Indemnity Co. for a rehearing was denied October 31, 1956.