Pete MACHA et ux., Appellants,

v.

Louis CROUCH, Appellee.

No. 791.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 25, 1973.

Rehearing Denied Nov. 15, 1973.

William K. Wilder, Edna, for appellants.

Blundell & Moore, O. T. Moore, Jr., Lockhart, for appellee.

## OPINION

BISSETT, Justice.

This is a suit for damages to land. Pete Macha and wife, Annie Macha, plaintiffs-appellants, brought suit against Louis Crouch, defendant-appellee, to recover damages alleged to have occurred to the surface of their land as a result of defendant's operations thereon as a mineral lessee. Plaintiffs alleged that defendant was negligent in his operations, and that he used more of the land than was reasonably necessary in connection with the production of oil and gas from the two wells located on the land in question. The jury, in response to the two special issues that were submitted, found that the defendant used more land than was reasonably necessary for his operations, and awarded damages for such unreasonable use in the amount of $3,000.00. Defendant's motion for judgment non obstante veredicto was sustained and judgment was rendered for defendant. Plaintiffs have appealed. We affirm.

Plaintiffs present two points of error. First, it is urged that the trial court erred in granting defendant's motion for judgment non obstante veredicto because there was evidence of probative value to support both of the jury findings. Second, it is contended that the trial court erred in refusing to submit plaintiffs' requested special issues on exemplary damages. Neither point can be sustained.

The land involved is an 80 acre tract, which was leased in 1931 by L. G. Kohanek (the then owner), as lessor, to Shell Petroleum Corporation, as lessee, for oil, gas and mineral development. The lease, down to 5,600 feet, was subsequently assigned to defendant, who prior to December, 1955, successfully drilled and completed two oil and gas wells thereon. He installed the usual production facilities, which included tank batteries at each well and flow, jet and salt water lines; he also dug a slush pit at each well and construct-

ed several salt water pits on the land. The original lease expressly permitted the lessee to build pipelines across the premises and to construct and maintain facilities on the surface of the land as may be necessary, useful or convenient in connection with the production, storage and marketing of minerals therefrom. The lessee was not limited by the lease contract to a specified amount of acreage that could be used for mineral operations, nor, was he required to fill any pits, or to pay any compensation for the acreage used by him in his mineral operations on the land.

Plaintiffs bought the surface of the 80 acres in December, 1955. At the time of the purchase, they were fully aware that the subject land was under a valid mineral lease, and that there were two producing wells on the premises. They also knew of the pipelines, pits and roads which were then on the premises and were being used by defendant. They further understood that none of the minerals on, in and under the land passed to them under their deed. Plaintiffs planted a large portion of the land to Coastal, Gordo and Bahia grasses; some acreage was put in cultivation. They built interior fences that created several enclosures within the perimeter of the 80 acres. No new well was drilled or completed by defendant on the 80 acre tract subsequent to plaintiffs' purchase thereof.

Much of plaintiffs' evidence related to damages sustained to the surface of the land, which were caused, not by an excessive use of acreage, but by defendant's failure to properly construct and maintain salt water pits, by his failure to properly keep the roads in good repair, and by his failure to bury pipelines. In addition, there is testimony that the roads which were built and maintained by defendant impounded water on the land, that plaintiffs' water well (which they drilled and completed in 1967) was contaminated by salt water, and that defendant's operations rendered some of the land unfit for gardening purposes. However, the damages, if any, that were sustained because such

failures and negligence, if any, are not involved in this appeal. The sole questions presented here are: (1) whether defendant used more land than was reasonably necessary in producing his two oil and gas wells; (2) if so, did plaintiffs prove their damages with sufficient certainty to enable the jury to compute them; and (3) whether issues on exemplary damages should have submitted to the jury. We are, therefore, not here concerned with any damages that may have been sustained because of defendant's alleged negligence.

The holder of an oil and gas lease, in the absence of specific clauses relating to surface use, compensation and damages, has the legal right to use as much of the surface as is reasonably necessary to comply with the terms of the lease and to carry out its purposes. Humble Oil & Refining Company v. Williams, 420 S.W.2d 133 (Tex.Sup.1967); Warren Petroleum Corporation v. Monzingo, 157 Tex. 479, 304 S.W.2d 362 (1957).

In order to recover damages because of injury to the surface of the land by a mineral lessee, the owner of the surface has the burden of pleading and proving (1) either specific acts of negligence by the mineral lessee which caused the alleged damage or that more land was used by the mineral lessee in his operations on the land than was reasonably necessary, and (2) the monetary amount of such damages with sufficient certainty to enable the jury to compute them. Arnold H. Bruner & Company v. McCauley, 319 S.W.2d 763 (Tex.Civ.App.—Eastland 1958, n. w. h.); 42 Tex.Jur.2d, Oil and Gas, § 190, pp. 404–405. In the case at bar, plaintiffs did not meet their burden of proof.

With respect to whether defendant used more land than was reasonably necessary, it is undisputed that the use of four acres (exclusive of roads) for each producing well would be reasonably required for defendant's operations. The evidence revealed that defendant used between five and six acres for slush pit and salt water

pit purposes, an indefinite amount of land for tank batteries, and an indeterminate quantity of acreage for pipeline purposes, including a strip 20 feet wide and 400 feet long that plaintiffs said cut them off from any effective use of a 10½ acre enclosure. Under the announcement by plaintiff's own expert witness, defendant, at all times pertinent to this appeal, was entitled to the use of eight acres for his operations on the subject land. There is no evidence that he used more than eight acres in such operations.

■ Even if it be held that there was evidence of probative value that defendant used more land than was reasonably necessary in connection with the operation of his two wells on the land in question, the plaintiffs failed to prove the monetary value of any loss sustained thereby which would enable a jury to arrive at any sum of money with any degree of certainty.

■ No issues were requested or submitted relating to permanent or temporary injury to the land; consequently, there was no jury finding of either permanent or temporary damage to the surface of the 80 acres. In a suit for permanent damages to the realty, it is incumbent upon plaintiffs to introduce some evidence of probative value of the difference between the actual cash market value of the land immediately before the injury and such value immediately thereafter in order for the jury to compute the damages sustained. Stafford v. Thornton, 420 S.W.2d 153 (Tex.Civ. App.—Amarillo 1967, writ ref'd n. r. e.). This, plaintiffs did not do. There is no evidence that the surface of the land was permanently damaged, and there is no evidence of the cash market value of the land immediately before the alleged injuries occurred and that immediately thereafter. The testimony that the land, three months before trial, would have been worth $300.00 per acre ($24,000.00) if no more than eight acres had been used by defendant, but that the 80 acre tract, in its then condition, was worth only $20,650.00, does not meet the requirements of the proper measure of damages if the land had been either permanently or temporarily damaged. The difference ($3,350.00) between the aforesaid values, which, according to plaintiff's witnesses, was the damage appraisal, was not based on the difference between the cash market value immediately before and after the injuries complained of, nor was it based on the cost of the work and repairs necessary to put the land back in the condition it was in preceding the alleged injury. Instead, it was based solely on loss of use of an undetermined quantity of land, the salt water seepage around the salt water pits, the presumed overflowing of salt water pits on to a vague area surrounding the salt water pits, the placing of stakes or anchors around each well, the failure to fill in ruts and holes caused by machinery, and the assumption that "pipes, flow lines and such" were "on top of the ground rather than being buried". The testimony relating to the basis for the damage appraisal at $3,350.00 does not relate to proof of damages from an excessive, unnecessary or unreasonable use of the property. Humble Oil & Refining Company v. Williams, supra. There is no evidence of any damage to growing crops or to plaintiff's improvements. Therefore, no basis was afforded the jury for an award of damages because of defendant's alleged excessive and unreasonable use of the surface of the land in question.

Under the aforesaid oil, gas and mineral lease, defendant, as mineral lessee, had the unqualified and unrestricted right to use and occupy the surface of the land to the extent that the same was reasonable and necessary for the purpose of drilling and producing the wells located therein. He owned the dominant estate. His rights were prior in time to those of plaintiffs. There is no evidence that it was unreasonable or unnecessary to construct and maintain tank batteries, slush pits, salt water pits, roads and pipelines in connection with the production of oil and gas from the said wells. There is no proof that the defendant used any more of the land than was reasonably

necessary to conduct his operations. The testimony that the location of the pipelines at the particular place on the land interfered with plaintiffs' use of a 10½ acre enclosure is not evidence that the pipelines were not reasonably necessary.

 There is no evidence that defendant, in conducting his mineral operations on the 80 acre tract, acted in a willful, wanton or malicious manner in complete disregard of plaintiff's rights. Circumstances of aggravation were not shown to exist. There is no evidence of any element of fraud, malice or oppression on the part of defendant. There is nothing in the record which indicates that the defendant was actuated by some evil intent or that the damages complained of were the result of acts or omissions that constituted gross negligence. The trial court properly refused to submit issues on exemplary damages.

The trial court correctly entered judgment for the defendant. Accordingly, all of plaintiffs' points are overruled. The judgment of the trial court is affirmed.