Annie McCANTS, Guardian for and on Behalf of the Minor, Vollie D. Brown, Appellant,

v.

Nadeem E. SALAMEH et al., Appellees.

No. 6019.

Court of Civil Appeals of Texas, Waco.

Oct. 30, 1980.

Rehearing Denied Nov. 20, 1980.

Isaac E. Henderson, Henderson, Wiggins & Adams, Houston, for appellant.

James S. Kelly, Kelly & Weium, Daniel K. Hedges, William W. Vernon, Fulbright & Jaworski, Houston, for appellees.

## OPINION

JAMES, Justice.

This is a products liability and negligence action. Plaintiff-Appellant Annie McCants, duly appointed guardian of Vollie D. Brown, a minor, brought this suit to recover damages in the amount of $419,500 for personal injuries sustained by Vollie Brown when he accidentally caught his right hand in a meat grinder manufactured by the Defendant–Appellee Hobart Manufacturing Co. Brown suffered this injury on the premises of a grocery store owned and operated by Defendant–Appellees Nadeem E. Salameh and Nicola E. Salameh. Plaintiff alleged that Brown was employed by the Salamehs and that the injury occurred while he was working in the regular course of his employment. Since the Salamehs did not have worker's compensation insurance, the action brought against them was a simple negligence action. Plaintiff's action against Hobart Manufacturing Co. was grounded in both negligence and in products liability, the primary contention being that the meat grinder in question was defectively designed.

Trial was to a jury which: (1) failed to find that Vollie Brown was an employee acting in the course of his employment by the Salamehs at the time the injury occurred; (2) failed to find that the Defendant Nick Salameh was negligent on the occasion in question; (3) failed to find that the meat grinder in question was defectively designed by Hobart Manufacturing Co.; (4) failed to find that the use of the machine in question without a hand guard exposed the users of the machine to an unreasonable risk of harm; (5) found the Vollie D. Brown was negligent on the occasion in question and that his negligence proximately caused the injury; and (6) found that the damages sustained by Vollie D. Brown could be adequately compensated by $00.00. On this verdict, the trial court rendered judgment that the plaintiff take nothing. We affirm the trial court's judgment.

Vollie Brown, who was fourteen years of age at the time of this accident, had been employed on an irregular basis to stock shelves at a small grocery store owned and operated by Appellees Salameh. He claimed that he was working on the afternoon of his injury, but Appellee owners disputed this claim. Appellees testified that Vollie Brown often hung around the store after school even though he was not working, but that Vollie had been told that he should report directly to them when he was working and that he had not reported for work the day of the accident. In any event, it is undisputed that on the afternoon in question an employee of the Salamehs, the butcher's assistant, asked Vollie Brown to carry some meat to the meat cooler for storage. Vollie Brown testified that he had never been in the meat cooler before; that his brother worked in the meat processing area with the butchers, but his brother had told him never to go into that area. Mr. Salameh also testified that he had told Vollie Brown never to go into the meat processing area. Nonetheless, on the afternoon of the accident Vollie Brown made two trips into the meat cooler. He testified that as he was leaving the meat cooler the second time he slipped on a wet spot on the floor and fell. As he fell his hand fell into a meat grinder that was

sitting on a table in the meat cooler. The power to operate the meat grinder came through two switches arranged in series; one was located on the wall of the cooler and one was located on the table near the machine. The machine was not turned on when Vollie fell, but according to Vollie, he accidentally hit one or both of the switches that turned on the machine. It is unclear whether all of this happened at once or in what sequence these events occurred. Nevertheless, Vollie Brown suffered a partial amputation of his thumb and three fingers on his right hand.

The major thrust of Appellant's case in trial was the contention that the injury occurred because the meat grinder was defectively designed. The machine in question was a Hobart Model 4332 meat grinder, manufactured in 1948, the basic design of which is depicted in the following drawing:

In normal use, meat placed into the "feed pan" was pushed under a "guard" (not shown) into the inverted bell or bugle-shaped feed throat ("A"); the meat passed through the feed throat into the cylinder ("B") surrounding an auger–like shaft called a worm. When the motor was activated the worm turned, grinding the meat and forcing it out through holes in a plate affixed to the end of the grinder ("C"). As noted above, the feed pan atop the machine contained a "guard" (not shown) which, in place, acted as a safety device. The guard, which was located directly over the opening to the feed throat, essentially reduced the size of the opening to the grinder so that it would have been impossible for a hand to pass through into the grinder. A device called a "stomper" was furnished with this machine; the stomper passed easily through

the openings in the guard and was designed to be used to push meat down into the feed throat.

The feed pan, and consequently the guard which was affixed thereto, was attached to the grinder by a single set–screw ("D"). Appellant attempted to prove in the trial court that the Hobart grinder was unreasonably dangerous because it was so easy to detach the feed pan and thus remove the safety device incorporated therein. The feed pan was not attached to the grinder at the time of the accident forming the basis of this suit.

Appellee Hobart defended against Appellant's allegations with testimony that the utility of this particular meat grinder would have been seriously reduced by a permanently–attached feed pan. Hobart introduced expert testimony that it was necessary to consider both safety and sanitation in designing a meat grinder. In order to maintain proper sanitation standards, the machine had to be cleaned frequently. The machine could not be properly cleaned without removing the feed pan. Thus, the ease of removing the pan for cleaning purposes was said to be an important factor in the overall utility of the machine. Hobart's expert further testified that the height and diameter of the feed throat ("A") was considered to be a sort of "back–up" safety feature. It was approximately seven inches from the top of the feed throat to the grinding apparatus or worm itself. Hobart's expert explained that this distance, coupled with the relatively small inside diameter of the feed throat at the opening to the worm (approximately two inches), greatly reduced the probability that a hand would accidentally pass through the feed throat and contact the worm, even when the feed pan was not in place. He testified further that he did not know of any accidents with this type of grinder similar to the accident described by Vollie Brown.

Appellant's expert witness basically testified that the easy removal of the feed pan and its attached guard rendered the grinder defective. He described an alternative design which included a permanently–affixed

feed pan and testified that this alternative design would have been feasible at the time the allegedly defective machine was produced. The record reflects that the alternative design proposed by Appellant's expert was in fact an exact duplication of a machine developed and manufactured by Hobart in 1968 or thereafter. Appellant's expert ultimately admitted, however, that he had not researched the technology available in 1948 and in fact had never seen any meat grinders except the machine involved in the accident and the machine later (circa 1968) produced by Hobart. He had no knowledge of the meat industry, of the probable users of the machine, or of the constraints imposed by health and sanitation regulations. In fact, it is apparent from the record that, although Appellant's witness was an expert engineer, he had no expertise specifically related to meat grinders, their design or their use.

■ In submitting this case to the jury, the trial court included the following instructions:

"A manufacturer is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product.

"By the term defective design, as used in this Charge, is meant a product designed which would be unreasonably dangerous to a user or bystander.

"You are instructed that the design of a product is unreasonably dangerous when the product manufactured according to such design threatens harm to a person coming in contact with or using the product to the extent that any product so designed would not be placed in the channels of commerce by a prudent manufac-

turer aware of the risks involved in its use or to the extent that the product so manufactured would not meet the reasonable expectations of the ordinary commercial purchaser as to its safety."

Appellant attacks only the first part of this instruction (i. e., the portion beginning with "A manufacturer is not an insurer . . ." and ending with "nor is it necessary to incorporate the ultimate safety features in the product."). He contends that this part of the instruction was unnecessary, in view of the remainder of the instruction submitted, and that it therefore constituted a comment on the weight of the evidence in the case and is so prejudicial as to require reversal.

The instruction complained of is a proper statement of the law.[1] *Henderson v. Ford Motor Company*, 519 S.W.2d 87, 93 (Tex. 1974). Our rules of civil procedure give the trial court considerable discretion in deciding what instructions are necessary and proper in the submission of a case to a jury. Rule 277, *Hill v. Robinson*, (Tyler Tex.Civ. App.1979) 592 S.W.2d 376, 383, NRE. Furthermore, Rule 277 now permits an incidental comment on the weight of the evidence where it is part of a proper explanatory instruction. While the instruction complained of might, strictly speaking, be somewhat repetitious, we cannot say that it was erroneously included in this charge. Moreover, if it was erroneous, the error was certainly harmless in this case. Rule 434. Appellant's first contention is overruled.

■ Appellant also complains of the trial court's action in excluding from evidence a brochure depicting and describing a meat grinder produced by Hobart in 1968. Appellant's expert actually described this 1968 product when he testified regarding "safer designs" that, in his opinion, could have

---

1. It is important to note that the trial court's judgment in this case was rendered April 14, 1978 and became final after the decision of our Supreme Court in *Henderson v. Ford Motor Company*, cited supra, but before the decision in *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979). We notice this because it is clear that the last part of the instruction submitted in this case, i. e., the portion including

the elements of "ordinary consumer" and "prudent manufacturer", was taken from language in *Henderson* (at 519 S.W.2d 92). Subsequently, in *Turner* (at 584 S.W.2d 847), the Court rejected the inclusion of those elements in cases involving design defects. In the instant case, Appellant has not challenged the portion of the court's instruction that included the elements rejected in *Turner*.

been manufactured at the same time as the allegedly defective machine. While the court allowed the expert to describe generally this "safer design" the expert was not allowed to state that Hobart had, in 1968, actually produced such a product and the trial court refused to admit the brochure that would have shown that Hobart later manufactured the exact product described as a "safer design." The exclusion of this brochure was not erroneous in our opinion.

"Whether a product was defectively designed must be judged against the technological context existing *at the time of the manufacture*." (emphasis ours). *Boatland of Houston, Inc. v. Bailey et al.*, 609 S.W.2d 743 (1980). Products manufactured *at the same time* as the allegedly defective one in question would certainly be relevant to show the technology existing at the time of the manufacture. However, the mere fact that a manufacturer produced a safer product twenty years after the production of an allegedly unsafe product would in no way be indicative of the capabilities existing at the time of the manufacture of the earlier design. Appellant's second contention is overruled.

We have carefully reviewed the entire record in this case and have considered Appellant's remaining points in view of this record and have found them lacking in merit. We therefore overrule all of Appellant's points and accordingly affirm the judgment of the trial court.

AFFIRMED.