**ORYX ENERGY COMPANY, Appellant,**

v.

**R.B. SHELTON, Individually, and Executor of Marian Shelton, Deceased, Appellee.**

No. 12–94–00045–CV.

Court of Appeals of Texas, Tyler.

Nov. 26, 1996.

J. Albert Kroemer, Dallas, Molly H. Hatchell, Mike Hatchell, Tyler, for appellant.

Paul Colley, Jr., M. Keith Dollahite, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

### OPINION ON MOTIONS FOR REHEARING

HOLCOMB, Justice.

Both Oryx Energy Company and R.B. Shelton filed motions for rehearing. After reconsidering the holding of our original opinion and other questions raised by the parties' motions, we grant R.B. Shelton's mo-

tion in part, overrule Oryx Energy Company's motion, withdraw our original opinion, and substitute the following opinion:

Appellant Oryx Energy Company ("Oryx") appeals the trial court's judgment which awarded R.B. Shelton, Independent Executor and Trustee of the Estate of Marian Shelton (the "Estate"), $13,500 in actual damages for unreasonable use of the surface rights in a certain tract and $60,000 in punitive damages. Oryx presents five points of error complaining that the evidence was both legally and factually insufficient to support the jury's verdict. In its last point of error, Oryx contends that the trial court erred in failing to instruct the jury on the duties owed by an oil company to the surface owner. We will **affirm** in part and **reverse and render** in part.

In 1904, the owners of a 1,081 acre tract of land near Hitts Lake formed the Hitts Lake Association (the "Association"). The Association members agreed to limit ownership in the tract to eight shares. Each owner held an undivided one-eighth interest in the tract and was entitled to set off twenty acres for construction of a residence. J.A. Bergfeld ("Bergfeld") held one of the eight shares of the Association.

In 1944, the Association members entered into an oil and gas lease with Sun Oil Company, which later became known as Oryx. Bergfeld ratified the lease in 1948. Although the parties executed the lease in 1944, Sun first drilled a well in 1953. Since 1953, Sun, or its successor Oryx, has drilled approximately fifty wells on the lease.

Upon Bergfeld's death, his share in the Association passed to his children, Marian Shelton, Marie Dillard, and Julius L. Bergfeld. After the death of Marian Shelton in 1984, her son, R.B. Shelton, on behalf of Marian's estate, acquired Marie and Julius' interests in the Association share.

In 1987, R.B. Shelton, individually ("Shelton"), filed a lawsuit against Sun alleging that it had negligently conducted its oil field operations, had excessively used the surface, and had polluted the property and the lake. In 1987, Shelton did not own an interest in the Association share. In February 1993,

Shelton amended his petition to assert these same claims against Sun's successor, Oryx, and to make such allegations in his capacity as independent executor and trustee of Marian's estate (the "Estate"). Based on the two-year statute of limitations, the trial court limited the Estate's claims against Oryx to actions of Oryx which occurred on or after February 26, 1991. The jury found that Oryx had not been negligent in its lease operations, but that Oryx had used more of the surface than was reasonably necessary. The jury awarded the Estate $13,500 in actual damages for permanent damage to the Hitts Lake property. Additionally, the jury found that Oryx's actions amounted to gross negligence or malice and awarded the Estate $60,000 as punitive damages. The trial court rendered judgment based on the verdict, and Oryx appeals the judgment.

■ In its first, second, and third points of error, Oryx contends that the evidence was legally or factually insufficient to support the jury's findings that Oryx used more of the surface than was reasonably necessary, that the Estate suffered any permanent damages as a result of Oryx's conduct after February 26, 1991, and that Oryx engaged in any conduct at any time which caused damage to the Estate.

■ To consider a "no evidence" point, an appellate court must consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *Federal Pac. Elec. Co. v. Woodend*, 735 S.W.2d 887, 893 (Tex.App.—Fort Worth 1987, no writ). If there is any probative evidence to support the jury's finding, the appellate court must overrule the "no evidence" point and uphold the jury's finding. On the other hand, an appellate court must sustain a no evidence point "when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the rules of law or evidence bar consideration of the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively shows the opposite of the vital fact." *Cadle Co. v. Castle*, 913 S.W.2d 627, 633 (Tex. App.—Dallas 1995, no writ).

■ Once an appellate court determines that there was some evidence to support the jury's verdict, the court must then determine if the evidence is factually sufficient. When reviewing a jury verdict for factual sufficiency, an appellate court must consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). "The appellate court is not a factfinder, and may not substitute its judgment for that of the jury, even if a different answer could be reached on the evidence." *Lehmann v. Wieghat*, 917 S.W.2d 379, 384 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

■ The holder of an oil and gas lease, in the absence of a specific contractual provision relating to surface damages, has the legal right to use as much of the surface as is reasonably necessary to comply with the terms of the lease and to carry out its purposes. *Macha v. Crouch*, 500 S.W.2d 902, 904 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Finder v. Stanford*, 351 S.W.2d 289, 291–92 (Tex.Civ.App.—Houston 1961, no writ). "A person who seeks to recover from the lessee for damages to the surface has the burden of alleging and proving either specific acts of negligence or that more of the land was used by the lessee than was reasonably necessary." *Humble Oil & Ref. Co. v. Williams*, 420 S.W.2d 133, 134 (Tex.1967). A plaintiff must adduce evidence that the actions of an oil and gas operator were not reasonably necessary. *Id.*

Considering only the evidence that tends to support the jury's finding of excessive use of the surface of the land, there is more than a scintilla of evidence to support the jury's finding that Oryx unreasonably used more of the surface of the land at Hitts Lake than was necessary for the operations that it conducted on or after February 26, 1991.

Question Two, as submitted to the jury, inquired as follows:

Did [Oryx] use more of the surface than was reasonably necessary proximately causing damages to Plaintiff?

In answering this question with respect to Oryx Energy Company you may consider only those actions which occurred on or after February 26, 1991.

Answer: Yes

Various witnesses testified about oil spills and leaks, saltwater spills and leaks, the adverse effects that such leaks had on the vegetation, the abandoned pipes and the large areas of land that Oryx used to store pipe. Regarding the spills, the Estate offered various reports of oil or saltwater spills at Hitts Lake that Oryx had filed with the Texas Railroad Commission. Between 1984 and 1993, Oryx reported sixty-one oil spills on the property, totaling 335 to 351 barrels of oil. However, Oryx did not have any reportable spills on the Hitts Lake property between 1991 and 1993. The only reported spill in the vicinity occurred on an adjoining lease and did not result from the operations of Oryx.

The Estate offered evidence of past oil spills by Oryx and the continuing effect of those spills. Shelton testified that he had seen evidence of spills on the property in the two years prior to trial. "Every time it rains, the oil comes up" and causes a sheen on the wetland from the oil leaks. Another surface owner, Frank Scott Otey, testified that he last caught fish in Hitts Lake in 1991 and the fish were not fit to eat. Surface owners testified that the spills had caused trees and bushes to die and had caused other damage to the vegetation.

Additionally, the Estate offered evidence that Oryx had unreasonably used the surface of the property. Otey testified that Oryx turned a forty to fifty acre pasture into "an open storage ground for pipes and other oil field related gear and paraphernalia." Shelton testified that various areas at Hitts Lake were cluttered with abandoned pipe, much of which was rusted.

There was some evidence that Oryx used more of the surface estate than was reasonably necessary for its oil and gas operations. The charge specifically directed the jury to consider only the acts of Oryx on or after February 26, 1991. There was some evidence that Oryx had damaged the surface of the Hitts Lake property. Additionally, there

was some evidence that the effects of such damage continued to the date of trial. Because there was some evidence to support the jury's affirmative answer to Question Two, we next weigh all the evidence to determine if the jury's verdict was clearly wrong and unjust.

In reviewing the factual sufficiency of the evidence, we must consider evidence which does not support the verdict. There was some evidence that the level of hydrocarbons in Hitts Lake was normal for East Texas and that such level of hydrocarbons did not affect the taste of fish. Additionally, an Oryx representative testified that Oryx had used only so much of the land as was reasonably necessary to produce oil and gas and had conducted various cleanup operations on the property. Although the evidence was conflicting, the jury's verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Because the evidence was both legally and factually sufficient to support the jury's verdict on liability, we overrule Oryx's first, second, and third points of error.

In its fourth point of error, Oryx contends that the trial court erred when it rendered judgment and awarded the Estate actual damages in the amount of $13,500. Oryx argues that the Estate offered no evidence, or factually insufficient evidence, of the value of the land at Hitts Lake immediately before and after the land incurred any permanent damage from the excessive oil field operations. We disagree.

The burden is on the plaintiff to establish its damages with reasonable certainty to enable a jury to compute them. *Simpson v. Phillips Pipe Line Co.*, 603 S.W.2d 307, 309–10 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). In a suit for permanent damage to realty, the plaintiff must offer some evidence of probative value of the difference between actual cash market value of the land immediately before the injury and such value thereafter in order for the jury to compute the damages sustained. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984); *Macha v. Crouch*, 500 S.W.2d 902, 905

(Tex.Civ.App.—Corpus Christi 1973, no writ). "The proper way of proving this difference in value is opinion testimony." *Porras*, 675 S.W.2d at 504.

At trial, the Estate offered proof of the proper measure of damages for permanent injury to land. The Estate offered evidence of the damages to the Hitts Lake property solely through the testimony and report of a real estate appraiser, John Heines ("Heines"). Heines estimated that the market value of the property in February 1986, without any oil and gas operations, was $1,490 per acre. Heines based his valuation on a $1,300 per acre offer, which did not result in a sale. Heines concluded that the diminution of the market value of the property was $190 per acre as a result of Oryx's excessive activities. There was some evidence of the market value of the tract immediately before and after the injury from which the jury could determine the amount of damages caused by Oryx's conduct. Similarly, after reviewing all of the evidence, it does not appear that the jury's verdict was so contrary to the evidence as to be clearly wrong and unjust. We therefore overrule Oryx's fourth point of error.

In its fifth point of error, Oryx challenges the legal and factual sufficiency of the evidence to support the jury's findings that Oryx was grossly negligent or acted with malice. It argues that there was no evidence in the record that anyone associated with Oryx engaged in any intentional conduct to injure the Estate. Shelton, on behalf of the Estate, argues that the evidence of abandoned rusty equipment and pipelines, numerous oil and salt water spills, the destruction of vegetation, and the excessive use of the surface area was ample evidence to support the award of punitive damages. We agree with Oryx's contentions.

Exemplary damages may be awarded only if the jury finds that fraud, malice or gross negligence are proven. TEX.CIV.PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp. 1996). To justify an award of exemplary damages on the issue of malicious conduct, Shelton must have presented legally and factually sufficient evidence that the defendant

was "consciously indifferent to the rights, safety, or welfare of others." TEX.CIV.PRAC. & REM.CODE ANN. § 41.001(7) (Vernon Supp. 1996).

Shelton testified that, in 1984 or 1985, he complained to a Sun employee about cleaning up the tract and burying pipelines. Sun had conducted oil and gas operations for over thirty years, and this was the first evidence that the landowners had requested cleanup. Other than the verbal request to bury pipe, Shelton admitted that he never wrote a letter to anyone at Sun or Oryx. There was no testimony that Shelton expressed his concern regarding the use of the land to anyone else at either Sun or Oryx. Viewing all the evidence in support of the jury's findings, there is no evidence in the record that Oryx or Sun acted with willful, wanton, or malicious conduct while conducting its mineral operations on the Hitts Lake property after February 26, 1991. We therefore sustain Oryx's fifth point of error.

█ In its sixth point of error, Oryx contends that the court erred when it failed to instruct the jury on the oil company's duty to a lessor. At trial, Oryx requested the following instruction:

> You are instructed that the Defendants are under no duty to fill slush pits, clean up drilling sites, remove unused equipment or take up abandoned pipe or pipe currently not in use.

Oryx argues that the court's failure to give this instruction may have led the jury to make an incorrect decision. We disagree.

█ An appellate court reviews a trial court's submission of explanatory instructions and definitions for an abuse of discretion. *Munoz v. Berne Group, Inc.*, 919 S.W.2d 470, 471 (Tex.App.—San Antonio 1996, n.w.h.). Jury charge error is reversible only if it caused, or was reasonably calculated to cause and probably did cause, the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986); TEX. R.APP.P. 81(b).

The trial court gave the jury Oryx's requested instruction regarding a mineral owner's right to use as much of the surface of the land as is reasonably necessary to conduct its mineral explorations. Although we agree with Oryx that the court could have given the jury additional guidance on the issue of a mineral owner's obligations in this regard, we do not agree that such failure was harmful error. The jury could have considered the activities mentioned in the requested instruction to find that Oryx excessively used the surface estate. However, the jury could also have reasonably based its finding on the various oil and saltwater spills, leaks, and damage to vegetation that are not addressed in Oryx's requested instruction. Additionally, in light of the other instructions that the court gave to the jury, Oryx's requested instruction could have been perceived by the court to be an improper comment on the weight of the evidence and an attempt to nudge the jury toward Oryx's theory of the case. Accordingly, we hold that the court's failure to give the requested instruction, even if error, was harmless. We therefore overrule Oryx's sixth point of error.

There was both legally and factually sufficient evidence to support the jury's verdict on the issues of liability for excessive use of the surface estate and actual damages. However, there was no evidence to support an award of punitive damages. Therefore, we **reverse** only that portion of the trial court's judgment awarding punitive damages **and render** judgment that R.B. Shelton, as Independent Executor and Trustee under the Last Will and Testament of Marian A. Shelton, Deceased, not recover punitive damages against Oryx Energy Company. In all other respects, the judgment is **affirmed.**